UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. *05-30012- MAP*

|  |  |
|---|---|
| J.C.P., Inc. d/b/a AUTOS BY JOSEPH, <br> Plaintiff | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| TOWN OF AGAWAM, <br> Defendant | ) <br> ) <br> ) <br> ) |

## NOTICE OF REMOVAL

The defendant, Town of Agawam, hereby petitions this Court that the above-entitled action, now pending against it in Superior Court of the Commonwealth of Massachusetts in and for the County of Hampden, Civil Action No.: 2004-01217-B, be removed therefrom to this Court under 28 U.S.C. Section 1441. In support of this Notice, the defendant states as follows:

1.   On or about December 21, 2004, the defendant, Town of Agawam, was served with a copy of the Summons and Complaint in this action.

2.   This is a civil action in which the plaintiff seeks to recover for actions resulting from the violation of the plaintiff's civil rights under Title 42 U.S.C. §1983.

3.   The underlying action may be removed to this Court by the petitioners pursuant to the provisions of 28 U.S.C. §1441 in that the action arises under a claim or right arising under the Constitution or laws of the United States.

4.   Within thirty (30) days of the filing of this Notice of Removal, the defendant shall file certified or attested copies of all records and proceedings in the State Court, pursuant to L.R. 81.1 of this Court.

282193v1

WHEREFORE, the defendant, Town of Agawam, prays that the above-entitled action now pending in Hampden County of the Commonwealth of Massachusetts be removed to this Court.

The Defendant
Town of Agawam

By Their Attorneys
MORRISON MAHONEY LLP

Carole Sakowski Lynch, BBO#547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA  01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

I hereby certify that a true copy of the
above document was served upon (each
party appearing pro se and) the attorney
of record for each (other) party by mail
(by hand) on___1 | 18 | 05

2

# Commonwealth of Massachusetts C O P Y

HAMPDEN

2004 DEC 19 AM 11:50

OFFICE OF THE MAYOR
AGAWAM, MA

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION

No. 04-1217

TRUE COPY ATTEST:

DEPUTY SHERIFF HND CT

J.C.P., INC., d/b/a AUTOS BY JOSEPH, Plaintiff(s)

v.

TOWN OF AGAWAM                              , Defendant(s)

### SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon ___Joseph M. Pacella, Esquire___ Egan, Flanagan and Cohen, P.C.
plaintiff's attorney, whose address is ___67 Market Street, P.O. Box 9035, Springfield, MA. 01102___
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint. You are also required to file your answer
to the complaint in the office of the Clerk of this court at Springfield either before service upon
plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any
other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the
motion
~~complaint~~, for a preliminary injunction and that a hearing upon such application will be held at the
court house at said Springfield in the ___B___ session without jury of our said court on ___Wednesday___
the ___22nd___ day of ___December___ A.D. 2004 , at ___2:00___ o'clock p.m.., at which you
may appear and show cause why such application should not be granted.

BARBARA J. ROUSE, ESQUIRE

Witness, _____ Esquire, at Springfield the ___twentieth___ day

of ___December___ in the year of our Lord ~~one thousand nine hundred and~~
two-thousand four.

_Marie D. Mazza_
CLERK/MAGISTRATE

### NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the
   caption. If a separate summons is used for each defendant, each should be addressed to the
   particular defendant.

tm/td



## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.:

J.C.P., Inc., d/b/a AUTOS BY JOSEPH, )
    Plaintiff      )
             )
v.             )
             )
TOWN OF AGAWAM     )
    Defendant    )

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.   The Plaintiff, J.C.P., Inc. d/b/a Autos by Joseph, (hereinafter "Pereira") is a Massachusetts corporation doing business as a used car dealership with a usual place of business at 1514 Main Street, Agawam, Massachusetts ("dealership"). Its President is Joseph Pereira.

2.   The Defendant, Town of Agawam, (hereinafter "Agawam") is a body corporate and politic with perpetual succession under the name "Town of Agawam," having its offices at 36 Main Street, Agawam, Massachusetts, 01001.

### FACTUAL BACKGROUND

3.   Since being approved in 1999, Pereira has held a Class II Dealership License and operated the dealership on property that is owned by Fran and Karen Connor and Diane and Michael Biscaldi (together referred to as "owners").

4.   Pereira and his dealership have always been in good standing with Agawam, having never been cited for any code, ordinance or other violation nor have there been any consumer complaints.

5.   Pereira was duly licensed to sell used cars in 2003, having a Class II Dealership License issued by Agawam.

6.   In 2003, Joseph Pereira was undergoing chemotherapy and other treatment for a reoccurrence of cancer and needed to spend more time focusing on his medical needs.

7.   Pereira sought to transfer the leasehold and his license for the dealership to another party in the fall of 2003 and asked the owners, who agreed, to assist him as his agent.

8.  The owners, acting through Fran Connor, advertised and marketed the dealership and obtained an interested dealer, Five Star Auto Sales, who sought a transfer of Pereira's license.

9.  Pereira intended to maintain the dealership until a transfer was accepted whether it be Five Star Auto or another dealership.

10. As such, Pereira purchased a $25,000.00 surety bond for the year of 2004, which was effective December 1, 2003.

11. The abutters list was also certified on December 8, 2003.

12. On December 16, 2003, Five Star Auto applied for a transfer of J.C.P., Inc.'s Class II dealership license. See attached Exhibit B. Five Star Auto's principal was a car dealer who was presently licensed and had operated a Class II used car dealership for eight (8) years in the town of Marlborough, Massachusetts.

13. Five Star Auto's transfer package was submitted with a form letter of surrender signed by Pereira, which is identical to the form attached as Exhibit C which comes with the transfer package. See Exhibit C.

14. Acting as the plaintiff's agent, Fran Connor repeatedly discussed the time table and procedure for transferring the license with town officials and on December 23, 2003, Fran Connor went into the Clerk's office to find out if anything else was needed and if a hearing had been set for the transfer application of Five Star Auto. The Town Clerk of Agawam, Richard Theroux, overheard Mr. Connor and immediately became confrontational. See Exhibit D, Affidavit of Fran Conner, which is hereby incorporated by reference.

15. Pereira never received any letter or other communication directly or through his agent from Agawam telling him to renew the license by the close of November. Pereira received mail at the property through the end of the year and into 2004, some of which Fran Connor would deliver to him. Nor did Agawam notify the Registrar that Pereira's license had been revoked on January 1, 2004 as required by c. 140, § 59.

16. Agawam provided insufficient notice to Pereira under Massachusetts law including but not limited to c. 140, § 59. Agawam had plenty of time before the November deadline to provide additional notice to Pereira after the letter was returned and purposefully did nothing, despite the fact that additional communications were made to other dealers to encourage the completion of their application in the past.

17. On December 23, 2003, Pereira was called by the owners and went immediately down to Town Hall to complete an application for renewal. Town officials assured Pereira and the

2

owners that J.C.P., Inc. did not have to renew the license at that time as the transfer had already been filed.

18. After reviewing the transfer application, town officials again told Pereira and the owners that Pereira only needed to sign another letter of surrender as they could not find one with the application.

19. The Clerk then went and returned with a typed up transfer letter that he prepared or had prepared. Pereira was, at first, concerned that this was not on the town's form but signed the letter after the town officials agreed with him that the license would remain with Pereira if Five Star Auto was denied the transfer. See Exhibit A.

20. Pereira completed and executed the renewal application by asking for and copying verbatim his past application for 2003. This application was not acted upon at that time, and Pereira submitted the application but believes that it was not officially stamped until May of 2004 after he had gone down in March or April of 2003, seeking to pick up the 2004 license.

21. On or about February 18, 2004, the Agawam City Council ruled against the transfer of J.C.P., Inc. d/b/a Autos by Joseph's transfer of the Class II Dealership License to Five Star Auto Sales. See transcript enclosed as Exhibit E. Agawam not only entertained the transfer but the council even told a gentleman who applied for a license earlier that night that there were no licenses available. Had Agawam felt that Pereira's license was not renewed, then there was no license as of January 1, 2004. As such, Five Star Auto should never have had a hearing and the person that applied earlier that night should have been eligible for consideration for the license.[1]

22. Under information and belief, Agawam's unstated position prior to the time of the February 18th hearing was that Pereira's license would be lost to attrition if Five Star Auto was denied a license as Pereira's letter of surrender was not on the town's form and could be interpreted as having been a non-conditional surrender to Five Star Auto. The council was likely not aware that Exhibit A was prepared by its Clerk.

23. Pereira and the owners were told by Five Star Auto's principal that his criminal record was unfairly made a substantial issue despite the fact that all of his cases were dismissed upon payment of court costs and that he had heard from Councilor Rossi, a former police officer, through the clerk's office that he would not be found to be a "proper" person for a license as a

---

[1]There was also another person that applied on the night that Pereira's renewal application was taken off of the agenda that was told that there were no licenses available, despite the fact that the law seeking to reduce the number of licenses was still being drafted and had not been passed in final form.

3

result.

24. It is important to note that Agawam was in the process of creating an ordinance that would reduce the number of licenses from 30 to 20 within the town. Licenses would be grand fathered but, after the law was finalized, no one would be issued a license until the total number fell to nineteen.

25. Except for Pereira, Agawam had never before not allowed a Class II dealer to renew the license late. In fact, many used car dealers have renewed and/or picked up their Class II licenses late without a problem, including Chris' Autos and Agawam Tire and Auto which have had their licenses renewed several months late.

26. While some town officials thought that it was inappropriate that the license holders could transfer their license to another dealer if accepted and that they should first surrender it to the town, this is the way it has always been in Agawam. To do otherwise, would restrict Sarat Ford or any other used car dealers from ever selling the property interests in their business.

27. After being told when he went to pick up the license that the license was in the folder but had a "hold on it" and that he needed to re-apply as a renewal, Pereira then re-activated the application that he filled out in December and attended a hearing in July of 2004, where no action was taken and the matter was ruled "off the agenda" by President Rheault.

28. At the July town meeting, Pereira was told by Councilor Rossi that the application was for a new license and not for renewal so it was improper since it needed to be for a new license. Pereira was told that no action would be taken since the law department had clarified that there was no current license there and that he should speak with them.

29. After that, I went down to the clerk's office to pay for the renewal and to get my license. I was told that the new license was sitting in the folder but that there was a "hold on it". I again spoke to Mr. Theroux who told me to that I the license was "pending" and I had to apply to the Licensing Board, but that this should be no problem as "we've always renewed them late in the past for people."

30. After the plaintiff's application for renewal was submitted, a Public Hearing was held by the Agawam Town Council in June of 2004, at which the language of the ordinance concerning Class II Dealership Licenses was amended so that all applicants must comply with Massachusetts General Laws Chapter 140 §§ 58 and 59. The Agawam Town Council further ruled that the number of new applications for Class II Dealership Licenses will be restricted to twenty (20) unless the licenses are already in existence. Councilor magovern made it clear that this ordinance did not apply to licenses that are surrendered as part of the transfer process, stating that if the Licensing Committee denies the transfer of the Class II Dealership License to

4

the new owner, then the Class II Dealership License remains with the <u>original</u> owner and is not "surrendered" to the Town of Agawam.

31. During the July Public Hearing, Pereira was initially told by Councilor Rossi that he could not have a hearing as the license had been "surrendered" to the Town of Agawam because Pereira failed to apply for a renewal. Therefore, J.C.P. "surrendered" its Class II Dealership license to the Town of Agawam and could not seek to "transfer" the license to Five Star Auto Sales.

32. The Agawam Town Council stated that the Town of Agawam's legal department had clarified that Pereira could not renew the license because it was surrendered and would have to apply for a new license. It was ruled that Pereira's application for renewal would be "off the agenda", and I was told to "go back to Town Hall thats all I can yell ya" by Councilor Rossi.

33. Pereira did not receive any notice that its Class II Dealership License had expired from the Town of Agawam or otherwise.

34. Councillor Rossi has since told Pereira that he would be better off seeking a license for another location, as no one is going to get that license.

35. Having been license for several years at this location, there was no question that Pereira was not still a "proper person to engage in the business specified in section fifty-eight...that the business was his principal business, [and] that he has available a place of business suitable for that purpose" pursuant to c. 140 § 59.

36. As such, Pereira was denied a hearing and decision on his application pursuant to Massachusetts law, including but not limited to c. 140 § 59.

37. It is very important to Pereira and his family that J.C.P., Inc. is allowed to renew this license and operate the business due to the lost profits that have occurred and continue to occur as a result of this matter.

38. Had Pereira been told on December 23, 2003 that he had failed to renew and that his license would be in jeopardy, he would have insisted that the renewal process be completed at that time. It would have been unfair not to allow his application at the next hearing, as Agawam had always done so in the past and there were no prior or intermittent violations by his dealership.

39. Pereira was unfairly and deceptively denied a license, as town officials misled him in order to delay and prejudice his application for renewal.

40. Pereira relied on the statements made by town officials to his detriment and was damaged.

5

41.  Pereira estimates that the dealership has lost between $5,000 and $10,000 per month in profit since April of 2004.

42.  Agawam's actions were arbitrary and capricious and were not supported by substantial evidence.

43.  Agawam's actions did not constitute fair treatment of Pereira and was an improper deprivation of the license.

## COUNT I
### (Declaratory Relief / Injunctive Relief)

44.  The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.  J.C.P. did not surrender its Class II Dealership License to the Town of Agawam.

46.  The Plaintiff, hereby requests that this Court (1) enter a preliminary injunction ordering the Town of Agawam to license the plaintiff to operate as a Class II used car dealer at the dealership and (2) enter a permanent injunction or to otherwise declare and adjudicate the rights of the Plaintiff as they pertain to the Class II Dealership License.

WHEREFORE, the Plaintiff requests the following order:

(i)    that Agawam reinstate and/or issue the Class II Dealership Licence for J.C.P., Inc. d/b/a Autos by Joseph for 2004 to the present upon payment of the required fees;

(ii)   that, in the alternative, the Court remand this matter to the Town of Agawam to order that a hearing be held to judge whether or not the application if submitted on December 23, 2003 should be renewed.

## COUNT II
### (Civil Rights)

47.  The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48.  Agawam's actions constituted a violation of the plaintiff's rights protected under the Massachusetts Civil Rights Act, G.L. c.12, in that he was deprived of his employment and of his right to due process of law and equal protection of the laws.

49.  Agawam's actions constituted a violation of the plaintiff's rights protected under Title 42 USC

6

§1983 and the Untied States Constitution in that he was deprived of his license and of his right to due process of law and equal protection of the laws, and was not afforded fair treatment, having been coerced and intimidated.

Wherefore, plaintiff demands judgment against the defendants in an amount to be determined by the jury, plus punitive damages, plus the costs of this litigation and his reasonable attorney's fees.

## COUNT III
### (Misrepresentation)

50.    The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51.    Agawam's is vicariously liable for the actions of town officials that made false statement to the plaintiff about a fact that a reasonable person would consider important to the decision that the plaintiff was about to make; that when the defendant made the statement, the defendant either knew that the statement was false, or recklessly made the statement by willfully disregarding its truth or falsity; that the defendants made the false statement with the intention that the plaintiff would rely on that statement in making its decision; that in making the plaintiff's decision, it did in fact rely upon the defendants' statement as true, and that its reliance was reasonable under the circumstances; and that plaintiff suffered some financial loss as a result of relying on the defendants' false statement.

WHEREFORE, Plaintiff request that this court enter judgment that the Defendant has by fraud, deceit and misrepresentation damaged the Plaintiff and that judgment enter in favor of the Plaintiff and to award just and reasonable damages, plus attorney's fees, costs and interest as provided by law.

## COUNT IV
### (M.G.L. c. 93A)

52.    The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.    The Defendant engaged in unfair and deceptive practices in engaging in fraud and/or deceit when the Town Clerk, acting on behalf of the Town, specifically instructed the Plaintiff to submit a "transfer" package to the Town of Agawam in lieu of renewing the Class II Dealership License, while anticipating the amendment to the above referenced ordinance.

54.    As a result, Pereira has and continues to lose more than $50,000.00 in profits.

7

WHEREFORE, the Plaintiff requests this Court award the Plaintiff damages against the Town of Agawam, double or trebled as the Court determines, plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

The Plaintiff
J.C.P., Inc., d/b/a Autos by Joseph
By its attorney

December 13, 2004

Joseph M. Pacella, Esq., BBO# 638018
Egan, Flanagan and Cohen, P.C.
67 Market Street, P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260 ext. 131
(413) 737-0121 (fax)

8

## VERIFICATION

### *The Commonwealth of Massachusetts*

Hampden, ss.

I, Joseph Pereira, President of J.C.P. Inc. d/b/a Autos by Joseph, the Plaintiff in the above-entitled action, state under the pain and penalties of perjury, that I have read the foregoing Complaint, and know the contents thereof, and that the same are true to my own knowledge.

December *13*, 2004

_____
Joseph Pereira, President

11728-040730\79725.wpd

12-23-03

I hereby surrender my Class II Dealers license from 1514 Main St., Agawam, MA to Ednei Pimenta.

Joseph Pereira

'03 DEC 23 PM 3: 45
TOWN CLERK OF TGN.
AGAWARD, MASS

THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

## APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE OR ASSEMBLE SECOND HAND MOTOR VEHICLES OR PARTS THEREOF

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a. . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance with the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? Five STAR Auto Sales

Business address of concern. No. 1514 Main St. . . . . . . . . . . . . . . . . . . . . . . . . . St.,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . Individual

3. If an individual, state full name and residential address.
Edner Rodriguez Pimenta
849 Boston Post Rd #9H Marlboro, MASS 01752

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? Yes

If so, is your principal business the sale of new motor vehicles? NO

Is your principal business the buying and selling of second hand motor vehicles? Yes

Is your principal business that of a motor vehicle junk dealer? NO

8. Are you a recognized agent of a motor vehicle manufacturer? *NO* .......................
(Yes or No)

If so, state name of manufacturer ..........................................................

...........................................................................................

9. Have you a signed contract as required by Section 58, Class 1? *NO* ....................
(Yes or No)

10. Have you ever applied for a license to deal in second hand motor vehicles or parts thereof? *YES* ..
(Yes or No)

If so, in what city — town *Marlboro, MASS* ............................................

Did you receive a license? *YES* ........................... For what year? ...............
(Yes or No)

11. Has any license issued to you in Massachusetts or any other state to deal in motor vehicles or parts thereof ever been suspended or revoked? *NO* ..............
(Yes or No)

...........................................................................................

...........................................................................................

...........................................................................................

...........................................................................................

Sign your name in full. *Edwin Rodrigues Pimento* ....
(Duly authorized to represent the concern herein mentioned)

*849 BOSTON POST RD #7H MARLBORO MA*
Residence......................................... *01752*

## IMPORTANT

EVERY QUESTION MUST BE ANSWERED WITH
FULL INFORMATION, AND FALSE STATEMENTS
HEREIN MAY RESULT IN THE REJECTION OF
YOUR APPLICATION OR THE SUBSEQUENT
REVOCATION OF YOUR LICENSE IF ISSUED.

NOTE: If the applicant has not held a license in the year prior to this application, he must file a duplicate of the application with the registrar. (See Sec. 59)

TOWN CLERK'S OFFICE
TOWN HALL
36 MAIN STREET
AGAWAM, MA 01001

DEAR TOWN CLERK:

PLEASE BE ADVISED THAT IN THE EVENT THAT _____

_____ IS APPROVED FOR A CLASS _____ DEALER

LICENSE, I WILL SURRENDER MY EXISTING LICENSE.

IF ANY ADDITIONAL INFORMATION IS NEEDED, PLEASE FEEL FREE TO

CONTACT ME AT _____ .

SINCERELY YOURS,

_____          _____

                                  DATED

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.:

J.C.P., Inc., d/b/a AUTOS BY JOSEPH, )
          Plaintiff )
            )
v. )
            )
TOWN OF AGAWAM, )
          Defendant )

## AFFIDAVIT OF FRAN CONNOR

Now comes Fran Connor and, on oath, deposes and says:

1.    My wife, Karen Connor, and I own the subject property located at 1514 Main Street in Agawam, Massachusetts with Michael and Diane Biscaldi, on which the dealership has been located for the past fourteen (14) years. I have served as the manager / owners' representative for this property.

2.    In 1990, I originally obtained the Class II Dealership License for this property. As part of this process, the lot was improved in compliance with and under the direction of the Town of Agawam licensing commission and Building Department to operate solely as a used car dealership.

3.    This lot has a small building and is paved, fenced and landscaped to serve exclusively as a car dealership.

4.    Since January 1, 2000, Joseph Pereira of J.C.P., Inc. has held a Class II Dealership License in Agawam and operated the dealership on our property called Autos by Joseph (hereinafter together referred to as "Pereira").

5.    Pereira has been a respected member of the Agawam business community. We have never been notified by the Town of Agawam or anyone that there was any problem, consumer complaint or violation of any nature.

6.     We have repeatedly been told by neighbors of the property, residents of the Town of Agawam and/or customers of Pereira that the dealership was a clean, trustworthy and respected business which served the public well by selling quality used vehicles to consumers who could not afford a new car.

7.     At or around the beginning of September in 2003, Pereira approached me, explained that he was having complications with his recovery from cancer treatments and asked if I would assist him in trying to locate someone to transfer the license and take over his lease of the property. I agreed and Pereira authorized me to act as J.C.P., Inc.'s agent in this regard.

8.     Following that conversation, I immediately went down to the clerk's office to ask what was needed to transfer the license and was directed to speak with the building inspector.

9.     Almost every other week thereafter, I stopped in to meet with Mr. Urbinati, the building Inspector, to find out for Mr. Pereira and ourselves as to what was needed to make sure that the license at this location was properly transferred. At first, I gave the Town my address and all of my telephone numbers, including my cellular phone, and asked them to contact me on either the dealership or the property owners' behalf should there be anything needed or which concerned the license at any time.

10.    I advertised the property. I kept the Town updated as to potential dealers that I was speaking with on Pereira's behalf and for months, was repeatedly told that the license was in good shape and that nothing was needed from the dealership except the new applicant's paperwork when the time came.

11.    On December 16, 2003, Five Star Auto applied for a transfer of J.C.P., Inc.'s Class II dealership license. Five Star Auto's principal was a car dealer who was presently licensed and had operated a Class II used car dealership for eight (8) years in the town of Marlborough, Massachusetts.

12.    I have since been told that a letter was sent to the dealership and returned as having no forwarding address. Despite all of the communications that were made and all of my contact information being on file, neither Joe Pereira nor I, as his agent, were ever notified that the Town of Agawam had sent him this letter telling him to renew the license nor were any other efforts made to contact either of us. In fact while he was sick, I routinely picked up mail for Joe and brought it to him and never saw such a letter.

13.    On December 23, 2003, I went down to check on the transfer application of Five Star Auto. As I attempted to find out the hearing date, I was overheard and questioned by the Town Clerk, Richard Theroux, who was very confrontational.

14. Mr. Theroux said "what application is that?" After he was told and had confirmed that I was not the license holder he said, "can't help ya pal". I said, "what do you mean you can't help me?" He told me "this license is none of your business." I responded that "what do you mean its none of my business? I am one of the property owners" and told him that Joe had authorized me to do this for him since he had been sick. I tried to explain what was going on with the proposed transfer and all of the efforts that we had been making to keep the town informed and to do everything that was asked of us.

15. In an attempt to explain the situation and in the hopes that Mr. Theroux would calm down, I also told him that we had been working with Mr. Urbanati to deal with the requested transfer of the license on this. Clerk Theroux immediately snapped at me and began to scream at me in front of the assistants in the office: "I don't give a shit who you've been talking to". I said "don't talk to me like that" and he said "I just did." The clerk then went into his office and slammed his door so hard that I thought that I heard the glass shatter.

16. As I went outside of the building to avoid this treatment, I was already on the phone with Mike Biscaldi telling him to call Joe to tell him to come down and to get the lawyer on the phone because the Town is playing games with the license. I am certain that people employed by the town heard this. Shortly after I had left, I received a call on my cellular phone from Mr. Urbanati, telling me to come back and that everything would be worked out. I assumed that he must have heard the Clerk yelling from his office upstairs and came down as a result. Mr. Urbanati was outside with Clerk Theroux waiting for me when I drove into the Town Hall. Theroux was very apologetic and told us that, "I did not realize you were working with Nick [Urbanati]".

17. Mike Biscaldi arrived and then Joe Pereira. Joe began to fill out the renewal application and we were insisting that we would just as soon as see him pay the $100.00 now even though it was normally paid when the license was picked up. We were finally able to calm down, as they kept assuring us that Pereira did not need to renew the license because the transfer had already been filed before the end of the year.

18. Our clear understanding from this meeting was that, since the application was already filed to transfer the license on December 16th, it was not necessary for J.C.P., Inc. to renew its Class II Dealership License. We entirely relied on what was said by the town's officials. After reviewing the transfer application, they again told us that Joe only needed to sign another letter of surrender as they could not find one with the application.

19.    Clerk then went and returned with a typed up transfer letter that he prepared or had prepared. See Exhibit A to the Verified Complaint. As we were certain that we could rely on this information and that everything would be alright, things became more amicable. The Clerk told us that he was sorry but that they had just "dealt with the V&F shit" and that he was still a little on edge over that. V&F is another Class II delaer in Agawam. I even joked with the clerk telling him "sorry to get you upset, how much do I owe you for the glass in your door?" and we shook hands.

20.    We all talked afterward about how it was strange that the letter of surrender was not on the town's form, but that after all that had happened, it would have seemed that we did not trus the town's officials to have questioned this procedure.

21.    On or about February 18, 2004, we were told that the Agawam City Council ruled against the transfer of the Class II Dealership License to Five Star Auto Sales. We were told by its principal that his criminal record was unfairly made an issue despite the fact that all of his cases appeared to be dismissed and that he had heard from Councilor Rossi that he would not be found to be a proper person as a result.

22.    Shortly thereafter, Pereira decided that he wanted to renew the lease with us for the dealership and went down to Town Hall to pick up the license. My partner, Mike Biscaldi even saw that the license had been prepared and was sitting in the file but they were both told that there was a hold on it and that he would need a hearing.

23.    Pereira then re-submitted the application that he filled out in December and attended a hearing, where no action was taken. I understand that the renewal was taken off of the agenda and that he was not afforded a complete hearing. Just before Joe re-submitted the application, we spoke with the Clerk who told us that it should be no problem and that it should sail through as a renewal since they (the town) had always allowed renewals late.

24.    The Plaintiff had paid us $1,600.00 per month for use and occupancy of the dealership. We are presently not receiving rent as a result of the town having taken the renewal application off of the agenda.

25.    As a former car dealer, I always understood that licenses remained with the original holder if the transfer was rejected. Joe never intended and stated unequivocally that he expected to renew this license if the transfer did not go through.

Subscribed to under the pain and penalties of perjury this _17_ day of December, 2004.

_Frances Connor_

Fran Connor

11728-040730\80107.wpd

### REGULAR MEETING OF THE AGAWAM CITY COUNCIL   February 17, 2004

President Rheault - I have an announcement that I like, a couple of announcements actually. The, I like to officially appoint to the sewer liaison committee four citizens to join with Councilor Mineo and Councilor Calabrese and Councilor Perry and the four are: Jack Cappuccilli, Jack O'Neill, Ron LaRiviere and Lowell McLane. For the record Councilor Letellier has just arrived. Second thing I have is in my discussion with the mayor today I asked him for the bid sheet as to the demolition, which is on next week's agenda, so you would have a complete detail as to who bid and what the bids were, so I like Bob if you would pass that around please. Thank you.

Item 6. Presentation of Petitions, Memorials & Remonstrances
(a) Resolutions

None.

Item 7. Report of Council Committees

None.

Item 8. Elections

None.

Item 9. Public Hearings
(a)
1. PH-2004-1-Application for Class II Dealer License for Five Star Auto Sales, 1514 Main Street, Agawam, MA (Conduct Public Hearing).

President Rheault - I now declare the public hearing opened. Is there a representative from Five Star that would like to address the council? You have ten minutes to address the council and please remain at the microphone if there are any questions back from the council. Go ahead sir.

Roberto Carvalhaes - Yes my name is Roberto Carvalhaes.

President Rheault - Can you come a little closer please to the microphone? Thank you.

Mr. Carvalhaes - Yes. My name is Roberto Carvalhaes. I am here with a partner here, so either one will apply for the use of car dealer.

President Rheault - And its your application sir? I am having difficulty hearing you up here.

Mr. Carvalhaes - Yes the application for the car, the car dealer.

2

## REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

President Rheault - Any questions from the council? Councilor Rossi?

Councilor Rossi - Is the license in your name?

Mr. Pimenta - Yes that's my name.

Councilor Rossi - No the gentleman that just spoke who said he'd make an application for a license, is the license gonna be in your name.

Mr. Carvalhaes - Is gonna be under his name.

Councilor Rossi - Is not under your name?

Mr. Carvalhaes - No.

Councilor Rossi- Are you gonna be an owner?

Mr. Pimenta - In the future yes.

Councilor Rossi - No I am asking you sir. Are you an owner?

Mr. Carvalhaes - No I am translation for him.

Councilor Rossi - Aren't you listed on here as 50% ownership?

Mr. Carvalhaes - Yes is gonna be partner, but just his name under the application.

Councilor Rossi - You're a 50% partner but you are not, your name is not gonna be on the application for the license, is that what you are telling this body?

Mr. Carvalhaes - Yes, yes.

Councilor Rossi - Is there any particular reason for that?

Mr. Carvalhaes - No because we, by the time he was applying for the CORI it was too late, because I figured he is not gonna need the CORI for me so I just let him, just so I don't want to waste more time to apply for another CORI, so I just let the pieces run under his name.

Councilor Rossi - Well I think the CORI is still gonna apply sir whether your name was on the license or not. If you're 50% owner, I think the CORI is still gonna apply to you.

Mr. Carvalhaes - But we are friend for a long time and it does not gonna be the problem.

3

REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

Councilor Rossi - I understand you friendship sir but that has nothing to do with the policies or procedures with this board. As you are 50% owner you are gonna be required to have a CORI check. Wasn't that explained to you at the process?

Mr. Carvalhaes - Yes we know everything, we got talking about it but I know the business is just gonna come under his name but I am gonna work with him.

Councilor Rossi - Yes I understand that but that's not the procedure here. When you made an application for a license you made it in his name only, you made it as an individual ownership, when in fact its not an individual, its partnership and its a 50/50 partnership.

Mr. Carvalhaes - Like I say I am just gonna work with him. I know the business is gonna come under this name. He is not a property ...

Councilor Rossi- Well I don't know any other way to attack the problem unless someone else does.

President Rheault - Any other questions from the council? Councilor Letellier.

Councilor Letellier - Yes I am sorry. Is one of your gentleman, is it Ednei Rodrigues Pimenta? O.k. so that's Mr. Pimenta. So we do have a CORI for Mr. Pimenta. O.k. and sir you are now saying that you are gonna be the 50% owner.

Mr. Carvalhaes - Yes I just let the papers just to help me. But we know in the future is gonna be both name, but for now just one name and that's it.

Councilor Letellier - Well I think I agree with Councilor, I really this isn't time for discussion, just time for questions. Alright thank you sir.

President Rheault - Councilor Mineo.

Councilor Mineo - Is, I guess my question is, is that legal to do something like that? I mean I don't know. I am just putting the question out there. I don't know you got two gentlemen here, one is the owner, neither of them?

Councilor Letellier - I am sorry I don't mean to be talking out of turn. But there is a Ms. Connor who owns the property. There is a Mr. Pimenta the person who is gonna run the concern. Ms. Connor is the property owner.

Councilor Mineo - O.k., who is, the license is gonna be in whose name? His name and you're his partner.

Mr. Carvalhaes - We're working two halves, working together.

4

**REGULAR MEETING OF THE AGAWAM CITY COUNCIL   February 17, 2004**

Councilor Mineo - I guess my question is I agree with Councilor Rossi why wasn't there another CORI check done? I mean you got two partners here and I don't know. I don't know how comfortable I feel with this.

President Rheault - Councilor Simpson.

Councilor Simpson - Thank you. On the application one of you gentleman lives in Framingham and the other one I think it was Marlborough. Are you moving to Agawam or who is running the business if you are running, if you are living that far away?

Mr. Pimenta - I have a dealer in Marlborough. We just apply for another one but that's no, we are talking about the partner you know 50%.So this time I am the one, I am just apply for one. I got another dealer in Marlborough. In the future that's possible I move to Agawam but not at this time because I got another dealer in Marlborough for 8 years and I am just being here to try to explain, because I don't speak English very well you know, this will happen you see he will work with me over there.

President Rheault - Sir so our clerk will be able to identify who is speaking, would you identify your name and address yes.

Mr. Pimenta - Yes 100% my name. Oh my name?

President Rheault - Yes.

Mr. Pimenta - is E-d-n-e-I and my last name is P-i-m-e-n-t-a.

President Rheault - And your address? I didn't catch your address.

Mr. Pimenta - Oh 849 Boston Post Road, Marlborough, MA.

President Rheault - Marlborough, MA.

Mr. Pimenta - Yeah.

President Rheault - Thank you. Alright Councilor Simpson I am sorry.

Councilor Simpson - O.k. just to clarify who is gonna be at the premise 9 - 5 five days a week? Who will be the person there? At this dealership on Main St.

Mr. Pimenta - Oh that's me. Me.

Councilor Simpson - You will be?

Mr. Pimenta - Yes Saturdays only.

5

## REGULAR MEETING OF THE AGAWAM CITY COUNCIL   February 17, 2004

Councilor Simpson - O.k.

President Rheault - You're finished councilor?

Councilor Simpson - Oh I am sorry yes.

President Rheault - Councilor Magovern did you want to speak?

Councilor Magovern - That was my question. Who was gonna be there. You are gonna be the onsite manager?

Mr. Pimenta - Yeah that's me.

Councilor Magovern - And your partner, where are you gonna be located? Are you gonna be there onsite as well or?

Mr. Pimenta and Mr. Carvalhaes - Yes.

Councilor Magovern - So the both of you are gonna be on site as long as the facility is open?

Mr. Pimenta and Mr. Carvalhaes - Yes, together.

Councilor Magovern - Thank you.

President Rheault - Councilor Carr Bitzas.

Councilor Carr Bitzas - Thank you. Mr. Pimenta you had a class II license in Marlborough?

Mr. Pimenta - Yes for 8 years.

Councilor Carr Bitzas - For 8 years?

Mr. Pimenta - Yes.

Councilor Carr Bitzas - I wondered because I was looking at your application and on the question, there is a question, did you receive a license you answered yes.For what year? There is nothing filled in there. So you have a current class II license in Marlborough?

Mr. Pimenta - Yes in Marlborough.

Councilor Carr Bitzas - Are you gonna plan to live in Marlborough?

6

Mr. Pimenta - Yes.

Councilor Carr Bitzas - And move down here to Agawam?

Mr. Pimenta - Mhm, yes.

Councilor Carr Bitzas - I see. O.k.

President Rheault - Finished?

Councilor Carr Bitzas - Oh yes.

President Rheault - Any further questions from the council? Thank you very much. Is there anyone in the audience who would like to speak on behalf of the ...

Mr. Pimenta - I am gonna try the best I can go over there.

President Rheault - Anyone who would like to speak in opposition to the granting of the license? Anyone who would like to just in name only? Any further questions from the council? Seeing none. I now declare the public hearing closed. What is the council's pleasure? Councilor Rossi.

. Councilor Rossi - Well I don't feel at this point here that the council can act on this license. First of all I am not happy with the fact that someone can enter into a partnership and apply for an individual member, application.

President Rheault - We have a motion on the floor first before we enter into dialogue.

Councilor Rossi- Oh I am sorry.

Councilor Simpson - So moved; seconded by Councilor Mineo.

President Rheault - Moved by Councilor .... Simpson, seconded by Councilor Mineo. Alright now you can talk.

Councilor Rossi - I am not comfortable with the application process at all. I think that it needs to go back and I think it needs to be resubmitted and I think they should may be have an opportunity to withdraw if they want. That's entirely up to them but the way I feel right now, there is a couple of items in here I am not comfortable with. First and foremost is the fact that the application wasn't filled out correctly. The application says list all owners on the thing, when clearly when the bond issue was submitted it was a 50/50 partnership. Now somebody is gonna enter a 50/50 partnership and put 50% of his money into a business he certainly, we have a right as a licensing authority to find out who that

7

## REGULAR MEETING OF THE AGAWAM CITY COUNCIL  February 17, 2004

person is. And that wasn't done. Second of all I am not very happy with the CORI report that we got back. That doesn't please me very much. But what I see before me right now I don't see any way that I can vote in favor of this.

President Rheault - Councilor Letellier.

Councilor Letellier - Yes thank you. I have the same concerns that Councilor Rossi has but I have a bigger concern and that has to do with the two licenses that are pending, the one this week and the one next time. And I don't like the idea that we are allowing dealers to say that they are surrendering their license to a particular individual. If you want to surrender your license you surrender it to the town and then, this is another way to avoid the list. And I am not pleased with it. And it has nothing to do with these gentlemen you know granted there are some things in the CORI that specifically relate to running a dealership and yes may be we should have CORIs for both. But I think if we look at the bigger picture here and are we letting the class II dealer licensees decide who is gonna have the next class II dealer license? That's our job, we are the licensing authority. We don't just say o.k. well you Joe Smith is done with his license and he is friend with Joanne Smith and he says o.k. Joanne now you can have my license. I don't think that's the way it should work.

President Rheault -I agree.

Councilor Letellier- No I think the licensing committee and the ordinance committee need to sit down. We tried to get things straightened out last term didn't'[t happen, this needs to happen sooner rather than later. So I am not gonna be voting for any license in which someone surrenders to somebody else without surrendering to the town first, thank you.

President Rheault - I agree. Councilor Carr Bitzas.

Councilor Carr Bitzas - I have the same concern that Councilor Letellier has and I had that concern since last year and our plan was to sit down and talk about an ordinance that would clarify these things because there is no clarification in the present ordinance. So I would hope that our president would refer this, some of this, refer this to the ordinance and licensing committee to clarify these things. As far as the CORI goes, if you're partners, one partner is equal to the other one, it says right on your application for a surety bond. One owns 50%, the other owns 50%. If we have one CORI report, we don't have the other, then we don't have everything to work with, so we do need to have the other CORI. So I would suggest too that they go back and reapply for this, thank you. I won't be voting for it.

President Rheault - Point of clarification. I believe this is, is this not Councilor Magovern in front of your committee now?

Councilor Magovern - No.

8

# REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

President Rheault - Its not?

Councilor Magovern - Not at the present time but I think it will be after tonight.

President Rheault - I think it should be and get actually Councilor Rossi probably should join and get that language straightened out so we don't have this in front of us again until everything is and I agree with Councilor Letellier...

Councilor Magovern - I'll call a meeting.

President Rheault - I don't believe they should be dictating to the council who is gonna inherit the license. O.k. so if you're, motion is in front of you to accept the application, if you're in favor of it vote yes, if not vote no, clerk please call the roll.

ROLL CALL - 10 NO, 1 ABSENT (Coun. Bitzas).

President Rheault - 10 yes, I am sorry 10 no and 1 absent we have defeated the application.

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS—44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

J.C.P. Inc. d/b/a Autos by Joseph

## DEFENDANTS

Town of Agawam

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Hampden
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Hampden
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Joseph M. Pacella, Esq. (413) 737-0260
Egan, Flanagan and Cohen, P.C.
67 Market Street, PO Box 9035
Springfield, MA 01102-9035

ATTORNEYS (IF KNOWN)
Carole Sakowski Lynch, Esq. (413) 737-4373
Morrison Mahoney LLP
1500 Main Street, Suite 2400, PO Box 15387
Springfield, MA 01115-0001

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES    (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Title 42 U.S.C. section 1983: The plaintiff claims he was deprived of his right to due process of law and equal protection of the laws, and was not afforded fair treatment, having been coerced and intimidated.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:    ☒ YES    ☐ NO

## VIII. RELATED CASE(S)    (See instructions):
IF ANY

JUDGE

DOCKET NUMBER

DATE    1/18/05

SIGNATURE OF ATTORNEY OF RECORD    Carole S. Lynch

FOR OFFICE USE ONLY    305825

JS 44 Reverse
(Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS—44

## Authority For Civil Cover Sheet

The JS—44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) **Plaintiffs -- Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS—44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS—44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** J.C.P., Inc. d/b/a Autos by Joseph

   v. Town of Agawam

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
      740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
      315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
      380, 385, 450, 891.

   ___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
      690, 810, 861-865, 870, 871, 875, 900.

   ___ V. 150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**    YES ☐    NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)**    YES ☐    NO ☒
   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**    YES ☐    NO ☒

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?**    YES ☐    NO ☒

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**    YES ☐    NO ☒
   **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -
   (SEE LOCAL RULE 40.1(D)).**    YES ☒    NO ☐

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?**    YES ☒    NO ☐
   (a)    **IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?** Western

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** Western

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION;**    YES ☐ NO ☒    **OR WESTERN SECTION;**    YES ☒    NO ☐

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME** Carole Sakowski Lynch, Esq.

**ADDRESS** Morrison Mahoney LLP, 1500 Main Street, Suite 2400, PO Box 15387, Springfield, MA 01115-0001

**TELEPHONE NO.** (413) 737-4373