# THE COMMONWEALTH OF MASSACHUSETTS

## TOWN ___ OF ___ AGAWAM ___

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE
## OR ASSEMBLE SECOND HAND MOTOR VEHICLES
## OR PARTS THEREOF

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a. . . . . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance wit the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business address of concern.   No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . St

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. If an individual, state full name and residential address.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? . . . .

If so, is your principal business the sale of new motor vehicles? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Is your principal business the buying and selling of second hand motor vehicles? . . . . . . . . . . . . . . . . . . .

Is your principal business that of a motor vehicle junk dealer? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. Are you a recognized agent of a motor vehicle manufacturer? . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                            (Yes or No)
so, state name of manufacturer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9. Have you a signed contract as required by Section 58, Class 1? . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                            (Yes or No)
10. Have you ever applied for a license to deal in second hand motor vehicles or parts thereof? . . . . . . . . .
                                                                                        (Yes or No)
so, in what city — town . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

d you receive a license? . . . . . . . . . . . . . . . . . . . . .        For what year? . . . . . . . . . . . . . . . .
                                (Yes or No)

11. Has any license issued to you in Massachusetts or any other state to deal in motor vehicles or parts

ereof ever been suspended or revoked? . . . . . . . . . . . . . . . . . . . . .
                                                (Yes or No)

Sign your name in full. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                    (Duly authorized to represent the concern herein mentioned)

Residence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IMPORTANT

EVERY QUESTION MUST BE ANSWERED WITH
FULL INFORMATION, AND FALSE STATEMENTS
HEREIN MAY RESULT IN THE REJECTION OF
YOUR APPLICATION OR THE SUBSEQUENT
REVOCATION OF YOUR LICENSE IF ISSUED.

NOTE: If the applicant has not held a license in the year prior to this application, he must file a duplicate of
he application with the registrar. (See Sec. 59)

# 617-660-460.0

## Criminal History Systems Board
The Commonwealth's Provider of Criminal Justice Information Serv

| Criminal Offender Record Information | Firearms Record Bureau | Victim Services Unit | Forms and Applications | Criminal Justice Information System | About CHSB |

## CORI

- Certification
- Requesting Records
  - ten or more requests
  - fees
  - record keeping requirements
  - request out-of-state records
- General Grants
- Acts Protecting Children
- Reference Codes
- Frequently Asked Questions
- Forms and Application

**News and Information**

- Fees
- Acts Protecting Children

## Fees and Fee Exemptions

Pursuant to new legislation effective July 1, 2003 amending M.G.L.c.6, §172A, the fees for CORI requests have increased to the following:

- Non-governmental certified agencies: $30.00
- Personal Requests for CORI: $25.00
- Third Party Authorization/Advocate: $25.00
- Public Request for CORI: $30.00
- Attorney Request (court order) for CORI: $30.00
- Governmental certified agencies: $ 0.00
- Fee-waived agencies: $ 0.00

Effective July 1, 2003, CORI requests submitted without the increased fee will be returned to the requestor. All fees must be made payable by check or money order to the Commonwealth of Massachusetts. All organizations are liable for payment and any late fees that may result from non-payment. All fees collected are deposited into the Commonwealth's General Fund, and are not refundable for any reason.

### Fee Exemption Process for Certified Agencies

If the applicant is not a government agency, is already certified, and meets the requirements listed below, a fee exemption may be requested from this agency. The request should be submitted on agency letterhead and specifically address all three of the criteria listed below. Enclose any documentation that supports the request.

Although government agencies are fee-exempted, private entities that have contracts with the government or receive government funding are not necessarily considered governmental agencies for this purpose. Also, not-for-profit agencies are not necessarily entitled to a fee exemption as a result of their tax status, and must apply for consideration.

The Board has determined that a fee exemption shall serve the public interest only where:

1. the agency or entity requesting the fee exemption provides services to the elderly, children, victims of crime, medically infirm persons, or the physically or mentally challenged; and
2. more than 50% of the staff of the agency or entity are uncompensated volunteers; and
3. the agency or entity requesting the fee exemption charges

## Related Link

- Administrativ Office of the Court
- General Law Massachuset

no fee for its services or charges a nominal fee that may be waived.

Fee Exemption Process for Personal Record Requests

Beginning July 1, 2003, the Criminal History Systems Board shall assess a fee in the amount of $25.00 per request for a personal criminal record request or a third party authorization request (from attorneys and advocates) as required by M.G.L. c. 6, § 172A. A fee shall not be imposed if an individual is determined to be indigent as defined by section 27A of chapter 261. In order to be considered for a waiver of the $25.00 fee, kindly review the following provisions:

1. For Inmates: Please provide an affidavit of indigency as set forth by M.G.L. c. 261, § 27A-27G together with a copy of all accounts for the past six months. The affidavit should include the following language:

"I state under the pains and penalties of perjury that the statements made in this affidavit are true, that I have not omitted any assets that are available to me to pay fees, that I have not transferred any assets to avoid payment of the fee, and that I have not taken any action nor has any action been taken on my behalf to any assets in order
to avoid having such assets used for payment of the fee."

2. For individuals receiving state or federal benefits: Please provide proof that you are currently indigent as defined at M.G.L. c. 261, § 27A. You may be eligible if you are:

(a) receiving public assistance under the aid to families with dependent children, program of emergency aid for elderly and disabled residents or veterans' benefits programs or who receive assistance under Title XVI of the Social Security Act or the Medicaid program, 42 U.S.C.A. 1396, et seq.;

(b) a person whose income, after taxes, is 125% or less of the current poverty threshold established annually by the Community Services Administration pursuant to section 625 of the Economic Opportunity Act; or are

(c) a person who is unable to pay the fees and costs without depriving himself or his dependents of the necessities of life, including food, shelter and clothing. But an inmate shall not be declared indigent unless he has complied with the procedures set forth above.



© Commonwealth of Massachusetts

# PERSONAL MASSACHUSETTS CRIMINAL RECORD REQUEST FORM

If you would like a copy of your own Massachusetts criminal record, complete this form, sign it in front of a notary public, and mail it, along with a check or money order made payable to the Commonwealth of Massachusetts in the amount of $25.00 pursuant to M.G.L. c.6, §172A and a self-addressed stamped envelope to this agency. If you are indigent you may apply for a fee-waiver pursuant to the provisions of M.G.L. c.661, §27A, please see the fee-waiver criteria below or visit our website at: www.mass.gov chsb. Walk-in service is not available. If you are incarcerated and a notary public is not available, have an official of the correctional facility endorse same. This agency's mailing address is: the Criminal History Systems Board, 200 Arlington Street, Suite 2200, Chelsea, MA 02150 ATTN: CORI Unit.

*Please be advised that it is unlawful to request or require a person to provide a copy of his criminal offender record information, except as authorized by the Criminal History Systems Board, as per M.G.L. c. 6, §172.*

---

| Last name | First name | Middle name |

---

| Maiden name | Alias |

---

| Date of birth (MM/DD/YY) | Social Security Number (requested but not required) |

---

| Mailing address | Town | State | Zip code |

I hereby swear, under the pains and penalties of perjury, that the information I have provided above is true, and to the best of my knowledge and belief.

---

| Signature of requestor | Date |

## AUTHENTICATION OF SIGNATURE BY NOTARY PUBLIC OR CORRECTIONAL FACILITY

_____, SS.

The above-named _____, appeared before me, the undersigned authority, this _____ day of _____, 200____ and acknowledge the foregoing signature to be made of his or her own true free act and deed.

---

| Notary public | Correctional Facility Official (give rank and title) |

---

| My commission expires | Correctional Facility Address and Phone |

EXHIBIT B



U.S. POSTAGE 0.60

MA
SEP 23 '03
AGAWAM

JCP, INC dba AUTO'S BY JOSEPH
1514 MAIN STREET
AGAWAM, MA 01001

AUTO514    0100120I7 1A03    14    10/04/03
:AUTOS BY JOSEPH  RETURN TO SENDER
MOVED LEFT NO ADDRESS
UNABLE TO FORWARD
RETURN TO SENDER

01001+2840017/1837

Town Clerk's Office
TOWN OF AGAWAM
36 MAIN STREET
AGAWAM, MA 01001-1837

DEC 22 '04 11:40

**2**

TO-2004-4

## THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE OR ASSEMBLE SECOND HAND MOTOR VEHICLES OR PARTS THEREOF

03 DEC 15 PM 12:48

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a . . . . . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance with the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? *Five STAR Auto Sales* . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business address of concern. No. *1514 Main St* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .St.,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . . .

. . . . . . *individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. If an individual, state full name and residential address.

. . . . . *Edner Rodrigues Pimenta* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . *849 Boston Post Rd #7H Marlboro, MASS 01752* . . . . . . . . . . .

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? *Yes*

If so, is your principal business the sale of new motor vehicles? . . *NO* . . . . . . . . . . . . . . . . . . . . .

Is your principal business the buying and selling of second hand motor vehicles? *Yes* . . . . . . . . . . . .

Is your principal business that of a motor vehicle junk dealer? *NO* . . . . . . . . . . . . . . . . . . . . . .

**3**

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

J.C.P., INC. d/b/a AUTOS BY JOSEPH, )
    Plaintiff )
     )
v. )
     )
     )
TOWN OF AGAWAM, )
    Defendant )
     )

## AFFIDAVIT OF JUDY BEAUREGARD

I, Judy Beauregard, hereby depose and say:

1.    I am the Assistant Town Clerk for the Town of Agawam, Massachusetts.

2.    I recall having contact with Joseph Pereira of J.C.P., Inc. with regard to the issue of his Class II dealer license.

3.    I recall informing Mr. Pereira prior to the expiration of his Class II dealer license on January 1, 2004 that he should renew it even though he was planning on selling his business and transferring his license to another entity. I informed him that he should renew the license to make sure that it was current because I did not know if the Town Council would approve his request to transfer his license.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _321_ DAY OF JANUARY 2005.

_Judy Beauregard_
Judy Beauregard

281344v1

**4**

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

|  |  |
|---|---|
| J.C.P., INC. d/b/a AUTOS BY JOSEPH, Plaintiff | ) ) ) |
| v. | ) ) |
| TOWN OF AGAWAM, Defendant | ) ) ) |

## AFFIDAVIT OF MARGARET PANDOLFI

I, Margaret Pandolfi, hereby depose and say:

1. I am the Principal Clerk at the Office of the Town Clerk for the Town of Agawam, Massachusetts.

2. In my position, I had contact with Joseph Pereira of J.C.P., Inc. with respect to his Class II dealer license.

3. I recall that Mr. Pereira came into the Town Clerk's Office and discussed his interest in transferring his license to another entity, Five Star Auto. I recall informing him that he should renew his Class II dealer license before it expired on January 1, 2004 since approval by the Town Council of his transfer request was not certain.

4. I also recall overhearing the Town Clerk, Richard Theroux, and the Assistant Town Clerk, Judy Beauregard tell Mr. Pereira that he should renew his Class II dealer license before it expired on January 1, 2004.

5. I have reviewed the records of the Town Clerk's Office regarding the Class II dealer license of Chris' Autos in Agawam, Massachusetts. The records indicate that the Town Clerk's Office received Chris' Auto's renewal application for a Class II dealer license on December 29, 2003. As with all Class II dealer licenses, it was scheduled to expire on January 1, 2004. On January 12, 2004, the Town Clerk's Office was informed by the Collector's Office that Chris' Auto was delinquent in paying its taxes. Chris' Auto paid the outstanding taxes on January 27, 2004. Subsequently, Chris' Auto application was allowed to move forward for review by the Town Council. There was also an issue regarding a CORI check that was needed. The Town Council approved the renewal application on March 3, 2004. Following a 10-day waiting period, the license was available on March 13, 2004.

6. I also reviewed the records pertaining to the Class II dealer license of Agawam Tire and Auto. These records indicate that the Town Clerk's Office received

281342v1

Agawam Tire and Auto's application for the renewal license on November 17, 2003. The Town Clerk's Office received the CORI information on Agawam Tire and Auto on December 2, 2003. The renewal application was placed on the agenda of the Town Council on January 5, 2004. The Town Council approved the application on January 20, 2004. Following a 10-day waiting period, the license was ready to be picked up on January 30, 2004. The records indicate that Agawam Tire and Auto picked up their license on March 3, 2004.

7. The renewal application of Agawam Tire and Auto was received on time. The renewal application of Chris' Auto was received late in the renewal process, but before the license expired.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _3rd_ DAY OF JANUARY 2005.

_Margaret Pandolfi_
Margaret Pandolfi

5

Massachusetts

# Western Surety Company

## SECOND HAND MOTOR VEHICLE DEALER BOND
### (Mass. Gen. Laws Ann. 140, § 58(c))

Bond No. _____ 69623325 _____

#### KNOW ALL PERSONS BY THESE PRESENTS:

Effective Date: __ January 1, 2004 __

That we, J. C. P., Inc. dba Auto's By Joseph _____
as Principal, and WESTERN SURETY COMPANY, a corporation authorized to do surety business in the Commonwealth of Massachusetts, as Surety, are held and firmly bound unto persons who purchase a vehicle from the Principal and who suffer loss on account of a breach of the condition of this bond described below, in the sum of not to exceed TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), for the payment of which well and truly to be made, we bind ourselves and our legal representatives, firmly by these presents.

WHEREAS, the Principal is a second hand motor vehicle dealer and is required to furnish a bond or equivalent proof of financial responsibility pursuant to Mass. Gen. Laws Ann. 140, § 58(c)(1).

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall pay the amount of actual damages, not to exceed the amount of this bond, to any person who purchases a vehicle from the Principal and who suffers loss on account of: (a) the Principal's default or nonpayment of valid bank drafts, including checks drawn by the Principal for the purchase of motor vehicles; (b) the Principal's failure to deliver, in conjunction with the sale of a motor vehicle, a valid motor vehicle title certificate free and clear of any prior owner's interests and all liens, except a lien created by or expressly assumed in writing by the buyer of the vehicle; (c) the fact that the motor vehicle purchased from the Principal was a stolen vehicle; (d) the Principal's failure to disclose the vehicle's actual mileage at the time of sale; (e) the Principal's unfair and deceptive acts or practices, misrepresentations, failure to disclose material facts or failure to honor a warranty claim or arbitration order in a retail transaction; or (f) the Principal's failure to pay off a lien on a vehicle traded in as part of a transaction to purchase a vehicle when the Principal had assumed the obligation to pay off the lien, then this obligation to be void; otherwise to remain in full force and effect.

PROVIDED, that recovery against this bond may be made only by a person who obtains a final judgment in a court of competent jurisdiction against the Principal for an act or omission on which this bond is conditioned, if the act or omission occurred during the term of this bond. No suit may be maintained to enforce any liability on this bond unless brought within one (1) year after the event giving rise to the cause of action. This bond shall cover only those acts and omissions described above. The Surety shall not be liable for total claims in excess of the bond amount, regardless of the number of claims made against this bond or the number of years this bond remains in force.

This bond shall be continuous and may be cancelled by the Surety by giving thirty (30) days' written notice of cancellation to the municipal licensing authority at _ 233 Allen St., Springfield, MA 01102 _____
by First Class U.S. Mail.                                          Address

Dated this ___ 1st ___ day of ___ December ___, 2003 __.

J. C. P., Inc. dba Auto's By
Joseph _____, Principal

By: _____

WESTERN SURETY COMPANY, Surety

By: _____
Paul T. Bruflat, Senior Vice President

Form F6333-7-2003

# Western Surety Co npany

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That WESTERN SURETY COMPANY, a corporation organized and existing un... ne laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, ...zona. Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawa'i, Idaho, Il... is, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Mis... uri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, ... o, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, U h, Vermon ...irgi.ia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby ma.e, constitu... id a point

_____ Paul T. Bruflat _____ of ...    _____        _____ Sioux Falls _____
State of ......... South Dakota _____ , its regularly elected _____    __ Senior Vice President _____ ,
as Attorney-in-Fact, with full power and authority hereby conferred up... him to sig    xecu.e, acknowledge and deliver for
and on its behalf as Surety and as its act and deed, all of the following c ses of do    to wit:

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in ,    uction or proceeding in any court of law or
equity, policies indemnifying employers against loss or damage caused by the misconduct of    r employees; official, ball, and surety and
fidelity bonds or indemnity in all cases where indemnity may be lawfully given, nd with full ;    er and authority to execute consents and
waiver to modify or change or extend any bond or document executed for this company, and ;    mpromise and settle any and all claims or
demands made or existing against said Company.

Western Surety Company further certifies that the following is a true and ..uct copy c    ..ns of the by-laws of Western Surety
Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or c ..obligations    ne corporation shall be executed in the
corporate name of the Company by the President, Secretary, any Assis.. ..nary, Treas    o or Vice President, or by such other
officers as the Board of Directors may authorize. The President, any Vice Pre ..ent, Secret.    any assistant Secretary, or the Treasurer
may appoint Attorneys-in-Fact or agents who shall have authority to issue bonus, .olicies, or u    akin.. in the name of the Company. The
corporate seal is not necessary for the validity of any bonds, policies, underta.. Powers of    co or or obligations of the corporation.
The signature of any such officer and the corporate seal may be printed by facsimile.

In Witness Whereof, the said WESTERN SURETY COMP... caused    he .ents to be executed by its
Senior Vice President ..... with the corporate seal affixed this ...    day of    ...  .. ...., 2003.

ATTEST                                                          .STE..    .. ETY .OMPANY

_J. Nelson_
_Assistant Secretary_                                          ...Bruflat, Senior Vice President

STATE OF SOUTH DAKOTA ⎫
                       ⎬ ss
COUNTY OF MINNEHAHA ⎭

On this 1st _____ day of December _____ , 2C. 1    .. before ...  all ....  ..rsonally appeared
................... Paul T. Bruflat _____ and ;    ...  ..  .. Senr Vice President _____
who, being by me  uly sworn, acknowledged that they signed the a...    ..er of Att...    ...  ..dger.. aid instrument to be
and Assistant Secretary, respectively, of the said WESTERN SUR...    ..PANY.
the voluntary act  .. d deed of said Corporation.

```
+++++++++++++++++++++++++++
+       D. KRELL          +
+ (SEAL) NOTARY PUBLIC (SEAL) +
+       SOUTH DAKOTA      +
+++++++++++++++++++++++++++
```
My Commission Expires November 30, 2006                    ._e .l_
                                                            _Notary Public_
Form F1975-4-2002

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500
FACSIMILE 617-439-7590

Carole Sakowski Lynch
Phone:  413-737-4373 Ext. 1233
clynch@morrisonmahoney.com

TOWER SQUARE
1500 MAIN STREET
SUITE 2400, POST OFFICE BOX 15387
SPRINGFIELD, MASSACHUSETTS 01115-5387
413-737-4373
FACSIMILE: 413-739-3125

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

RHODE ISLAND
PROVIDENCE

CONNECTICUT
HARTFORD

NEW YORK
NEW YORK

ENGLAND
LONDON

January 4, 2005

**HAND DELIVERED**

Civil Clerk's Office
Hampden County Superior Court
P.O. Box 559
Springfield, MA  01102-0559

**RECEIVED**

JAN - 4 2005

CLERK OF COURTS
HAMPDEN COUNTY

Attn:  Mary C. Cullinan

Re:     J.C.P., Inc. d/b/a Autos by Joseph v. Town of Agawam
        Civil Action No.:      04-1217
        Our File No.:          Not Yet Assigned

Dear Mary:

Enclosed for filing please find Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction in connection with the above-captioned matter.  Please be advised that the Plaintiff's Motion for Preliminary Injunction is on for a hearing this afternoon at 2:00 p.m. Would you kindly bring this opposition to the judge's attention before the hearing.

Thank you very much.

Very truly yours,

Carole Sakowski Lynch

CSL/esf
Enclosures
Cc:     Joseph M. Pacella, Esq. (hand-delivered)

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2004-01217-B

| | |
|---|---|
| J.C.P., Inc. d/b/a AUTOS BY JOSEPH, <br> Plaintiff | ) <br> ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF AGAWAM, <br> Defendant | ) <br> ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now comes the defendant, Town of Agawam, and respectfully moves that this court deny plaintiff's motion for injunctive relief. As reason for this request, the defendant states as follows.

## STATEMENT OF THE CASE

On November 5, 1999, Joseph Pereira, doing business as Autos by Joseph, applied for a Class II dealer license to buy, sell, exchange or assemble second-hand motor vehicles or parts with the Town Clerk's Office in Agawam, Massachusetts. On February 7, 2000, the Agawam Town Council approved the issuance of a Class II dealer license to Mr. Pereira. The license expired on January 1, 2001.

On October 18, 2000, November 26, 2001, and November 19, 2002, Joseph Pereira or J.C.P., Inc. d/b/a Autos by Joseph re-applied for Class II dealer's licenses. Each year, the applications were approved and Autos by Joseph was issued renewal licenses, effective January 1 of each year. In all cases, the licenses expired on January 1 of the following year.

By letter, dated September 15, 2003, the Town Clerk, Richard Theroux, informed J.C.P., Inc. d/b/a Autos by Joseph that it needed to apply for the renewal of its Class II dealer's license

281376v1

1.4.05

by November 21, 2003 in order to avoid being in violation. In the letter, J.C.P., Inc. was provided with the four necessary forms needed to process the renewal application. See Exhibit 1, Affidavit of Richard M. Theroux.

On October 4, 2003, the September 15, 2003 letter sent to J.C.P., Inc. was returned to the Town Clerk's Office as undeliverable. The postal service indicated on the returned letter that Autos by Joseph had moved and had left no address. See Exhibit 1, Affidavit of Richard M. Theroux.

On December 16, 2003, Ednei Pimenta filed an application with the Town Clerk's Office for a Class II dealer's license for the entity known as Five Star Auto Sales. On the application, Mr. Pimenta indicated that Five Star Auto Sales was an individual concern, not a partnership, association or corporation, looking to do business at 1514 Main Street in Agawam, the address occupied by J.C.P., Inc. See Exhibit 2, Application for a License completed by Ednei Pimenta.

On December 23, 2003, Joseph Pereira, along with Fran Connor and Michael Biscaldi, who were identified as the owners of 1514 Main Street in Agawam, met with the Town Clerk and informed him that J.C.P., Inc. wished to transfer its license to Five Star Auto. As a result, the Town Clerk assisted Mr. Pereira in preparing a letter setting forth his wish to transfer his license to Five Star Auto. At the same time, the Town Clerk informed Mr. Pereira, Mr. Connor and Mr. Biscaldi that the request to transfer the license needed the approval of the Town Council. The Town Clerk informed them that since J.C.P., Inc.'s Class II license was scheduled to expire on January 1, 2004, J.C.P., Inc. should apply to renew the Class II license even though it was requesting that the license be transferred. The Town Clerk informed them that in order to transfer the license, J.C.P., Inc. had to have a valid license which it would not have if it expired on January 1, 2004. The Town Clerk recalls giving Mr. Pereira the necessary forms to complete

January 1, 2004 and had not been renewed, it voted the application off the agenda and refused to issue J.C.P., Inc. a license.

## ARGUMENT

### I.    The Plaintiff is not Entitled to Injunctive Relief.

To obtain a preliminary injunction, the plaintiff must demonstrate (1) that it is likely to succeed on the merits of its claim; (2) that it will suffer irreparable injury if the injunction is not issued; (3) that the injury it will suffer outweighs any injury the defendant will suffer if the injunction is granted; (4) that the public interest will not be affected adversely by the issuance of the injunction. *Commonwealth v. Mass. Crinc*, 92 Mass. 79, 87-89 (1984); *See Packaging Industries Group, Inc. v. Chaney*, 380 Mass. 609, 616-18 (1980). The plaintiff cannot meet these criteria.

### A.    Plaintiff is Not Likely to Succeed on the Merits of Its Claim.

In order to bring an action for the declaratory relief under General Laws Chapter 231A, there must be both an actual controversy and legal standing. *United Oil Paintings, Inc. v. Commonwealth*, 30 Mass. App. Ct. 958, 959 (1991) *quoting Massachusetts Ass'n. of Indep. Ins. Agents and Brokers, Inc. v. Commr. Of Ins.*, 373 Mass. 290, 292 (1977).

In the subject case, the plaintiff requests that the court issue a Class II dealership license to the plaintiff so that it may "continue" to sell used motor vehicles pending the outcome of this matter.

This court should deny plaintiff's request since the plaintiff cannot show a substantial likelihood of success on the merits. First, the plaintiff has not met the 10-day statute of limitations contained in General Laws Chapter 140, Section 59. It provides in pertinent part as follows:

281376v1

4

> *Any person aggrieved by an action of the licensing board or officer*
> *refusing to grant, or revoking a license for any cause may, within*
> <u>*10 days*</u> *after such action, appeal therefrom to any justice of the*
> *superior court in the county in which the premises sought to be*
> *occupied under the license or permit applied for are located.*
> (emphasis added)

The plaintiff's application for a Class II dealer's license was denied by the City Council

on July 6, 2004. In that the subject action was not filed with the Court until December 17, 2004,

the 10-day statute of limitations has not been met.

Secondly, the plaintiff also cannot show a substantial likelihood of success on the merits

because the plaintiff's Class II dealer license was not renewed due to the plaintiff's failure to re-

apply for the license before it expired on January 1, 2004. As indicated in Exhibits 1, 3 and 4,

the plaintiff's representative was advised by representatives of the Town Clerk's Office that he

should apply for a renewal of his license even though he intended to transfer it to Five Star Auto

Sales. However, the plaintiff neglected to do so, and even waited over three months to apply

after the City Council turned down the application of Five Star Auto Sales in February 2004. In

addition, the Town Clerk's Office attempted to notify the plaintiff on or about September 15,

2003 that it was time to file for a renewed application. However, because the plaintiff

abandoned the business of used auto sales at the subject location and failed to notify the Town

Clerk's Office of a new address, the Town Clerk was unable to provide the plaintiff with the

necessary documents with which to re-apply for the license. Nonetheless, given that the plaintiff

had been re-applying consistently each year at the appropriate time interval, the plaintiff should

have known that it was necessary to re-apply for the license. In fact, the license that the plaintiff

held explicitly stated that it expired on January 1, 2004. In essence, there is no evidence of any

wrongdoing on the part of any Town employee and the plaintiff has only itself to blame for its

failure to timely apply for a new license.

5

**B.    The Plaintiff Cannot Show, Absent Injunctive Relief, That There Exists A Significant Risk of Harm to It of Irreparable Harm.**

As a result of not receiving a Class II dealer license following its application on May 28, 2004, the plaintiff alleges that it lost business value and profits. In essence, the plaintiff alleges economic harm.

However, the Courts have long held that economic harm alone will not suffice as irreparable harm. *Pri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 228 (2001).* While the courts have held that economic harm may suffice as irreparable harm if the loss threatens the very existence of a plaintiff's business, by analogy, the plaintiff cannot argue that it will be prevented from conducting business elsewhere if it is not given the license. Indeed, such a contention on the part of the plaintiff is far too speculative for this court to consider.

Moreover, the plaintiff cannot establish that the very existence of his business was damaged by the lack of license, given that he had apparently abandoned the business long before his application had been considered. That is, sometime prior to September 23, 2003, the plaintiff had abandoned his business in Agawam, given that the correspondence sent to the plaintiff's last recorded address was undeliverable. In addition, upon information and belief, the plaintiff has been doing business at 1650 Bay Street in Springfield, Massachusetts. In fact, J.C.P., Inc., obtained a second-hand motor vehicle dealer bond, pursuant to General Laws Chapter 140, Section 58(c), for the City of Springfield on December 1, 2003 which was effective as of January 1, 2004. See Exhibit 5. Therefore, the plaintiff cannot establish that it will sustain irreparable harm if it is not granted a license.

**C.    Balance of Hardship Does Not Tilt in the Plaintiff's Favor.**

In order to prevail on its request for preliminary injunction, the plaintiff must also establish that the balance of hardship tilts in its favor.  Given that the plaintiff neglected to re-apply for a Class II dealer license before it expired on January 1, 2004 and further delayed any attempt to reapply for the license for an additional five months, together with the fact that the plaintiff is apparently doing business in the City of Springfield, the plaintiff cannot show that the balance of hardship tilts in its favor.  Rather, if the plaintiff is allowed to receive a license more than a year after it should have been renewed, there will be a direct violation of General Laws Chapter 140, Section 59 which states that licensing authorities may grant licenses which shall expire on January 1 following the date of issue unless sooner revoked.  Furthermore, to issue a license to the plaintiff at this late date will unnecessarily weaken the role of the licensing authority, in this case the Town Council of Agawam.  Clearly, this would be a bad precedent to set.

**D.    Granting the Injunction will Negatively Affect the Public Interest.**

If this court were to issue a license to the plaintiff more than a year after the time within the plaintiff should have applied for a license renewal, this court will be overlooking the clear statute of limitations contained within General Laws Chapter 140, Section 59.  It will also be overturning a well reasoned and appropriate decision of the Town Council which is the licensing authority for the Town of Agawam.  Furthermore, it will be ignoring the customs and practices of the Town of Agawam which will be unfair to others similarly situated.  Indeed, there is no truth to the allegations stated by the plaintiff in its motion that two other dealerships in the Town of Agawam -- Chris' Autos and Agawam Tire and Auto -- received Class II dealer licenses after applying for them beyond the expiration date.  As indicated in the affidavit of Margaret Pandolfi,

281376v1

which is attached as Exhibit 4, both of these entities applied for the renewal license before their licenses expired on January 1.

Finally, one of the primary purposes of an injunction is to main the status quo pending trial. In this case, ordering the Town of Agawam to issue a license to J.C.P., Inc. would not maintain the status quo, given that J.C.P. had abandoned his business sometime prior to September 2003.

## CONCLUSION

For the reasons set forth above, the defendant respectfully requests that this court deny the plaintiff's request for injunctive relief.

<div style="margin-left: 40%;">

The Defendant
Town of Agawam

By Their Attorneys
MORRISON MAHONEY LLP

Carole Sakowski Lynch  BBO#547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA  01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

</div>

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on __1/4/05__
_____



A true copy.

Attest:

_Barbara Holubeck_
Deputy Assistant Clerk

8

1

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

|  |  |
|---|---|
| J.C.P., INC. d/b/a AUTOS BY JOSEPH,<br>    Plaintiff<br>v.<br><br>TOWN OF AGAWAM,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF RICHARD M. THEROUX

I, Richard M. Theroux, hereby depose and say:

1.    I am the Town Clerk for the Town of Agawam, Massachusetts.

2.    By letter, dated September 15, 2003, I informed J.C.P., Inc. d/b/a Autos by Joseph that it needed to apply for the renewal of its Class II dealer license. In the letter, I requested that J.C.P., Inc. complete the application for license, personal criminal record request form, federal identification number form and the form for a $25,000.00 surety bond. These forms were included in the letter. I also informed J.C.P. that after the completed forms were received by my office, the application would be placed on the next Town Council agenda. (A copy of the September 15, 2003 letter with the attached forms is attached as Exhibit A.)

3.    On October 4, 2003, the September 15, 2003 letter, (Exhibit A), was returned to my office as undeliverable as the postal service indicated that Autos by Joseph had moved and had left no address. (See Exhibit B.)

4.    On December 23, 2003, I had contact with Joseph Pereira, Fran Connor and Michael Biscaldi in the office of the Town Clerk. During the conversation, I was informed by these gentlemen that J.C.P., Inc. wished to transfer its license to Five Star Auto. As a result, my office assisted Mr. Pereira in preparing a letter advising the Town of Agawam of his wish to transfer the license. During the conversation, I informed Mr. Pereira and the other two gentlemen that J.C.P., Inc. should apply to renew the Class II license since it was scheduled to expire on January 1, 2004. I informed them that the transfer request had to be approved by the Town Council. To the best of my recollection, Mr. Pereira was given a copy of the necessary forms to complete in order to reapply for the Class II dealer license. The forms given to him were the same as the documents that had been mailed to him in Exhibit A.

5.    When Mr. Pereira left my office on December 23, 2003, I was under the impression that he was going to apply for the renewal of his Class II dealer license. I clearly recall informing Mr. Pereira before he left the Town Clerk's Office that he needed to have a current license in place while he tried to transfer his license to Five Star Auto or some other individual or entity. I told him that he should renew the license for 2004 and then take the matter of a transfer up with the Town Council.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ____4____ DAY OF JANUARY 2005.

Richard M. Theroux

2

EXHIBIT A



# Town of Agawam

**36 Main Street     Agawam, Massachusetts 01001-1837**

**Tel. 413-786-0400     Fax 413-786-9927**

September 15, 2003

JCP, INC dba AUTO'S BY JOSEPH
1514 MAIN STREET
AGAWAM, MA 01001

Dear License Holder:

It is time to make application for the renewal of your Class II Dealer License. Please complete the following forms.

1) **APPLICATION FOR LICENSE** - please type or print legibly in black ink.

2) **PERSONAL CRIMINAL RECORD REQUEST FORM** - this form has to be notarized and mailed to the address on the reverse side of the form. Your completed form should include a self-addressed stamped envelope. (This could take a few weeks for the record check to be returned to you.) **Please do this immediately.**

3) **FEDERAL IDENTIFICATION NUMBER** form.

4) **$25,000 SURETY BOND** - according to Chapter 422 of the Acts of 2002, please note in Class 2 section, Class II Dealer owners are now required to hold a surety bond of 25,000.

**Please turn all four forms in together to the Town Clerk's office,** record check from Criminal History Systems Board, the license application, Federal Identification Tax form and proof of the surety bond. These will be placed on the next Town Council agenda. Approval of a license requires 2 Council meetings, first as new business and the second under old business to be approved or denied.

Any forms turned in after November 21st will not be approved before the new year and you will be in violation.

Sincerely,

Richard M. Theroux,
Town Clerk

## THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE
# OR ASSEMBLE SECOND HAND MOTOR VEHICLES
# OR PARTS THEREOF

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a . . . . . . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance wit the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business address of concern.   No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . St

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. If an individual, state full name and residential address.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? . . . .

If so, is your principal business the sale of new motor vehicles? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Is your principal business the buying and selling of second hand motor vehicles? . . . . . . . . . . . . . . . . . . . . .

Is your principal business that of a motor vehicle junk dealer? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. Are you a recognized agent of a motor vehicle manufacturer? ............................
(Yes or No)

so, state name of manufacturer ..........................................................................

9. Have you a signed contract as required by Section 58, Class 1? ..............................
(Yes or No)

10. Have you ever applied for a license to deal in second hand motor vehicles or parts thereof? .........
(Yes or No)

so, in what city — town .......................................................................................

d you receive a license? ...........................        For what year? ...............
(Yes or No)

11. Has any license issued to you in Massachusetts or any other state to deal in motor vehicles or parts

ereof ever been suspended or revoked? ....................
(Yes or No)

Sign your name in full. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*(Duly authorized to represent the concern herein mentioned)*

Residence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IMPORTANT

EVERY QUESTION MUST BE ANSWERED WITH
FULL INFORMATION, AND FALSE STATEMENTS
HEREIN MAY RESULT IN THE REJECTION OF
YOUR APPLICATION OR THE SUBSEQUENT
REVOCATION OF YOUR LICENSE IF ISSUED.

NOTE: If the applicant has not held a license in the year prior to this application, he must file a duplicate of
he application with the registrar. (See Sec. 59)

$ 617-660-4600



**Criminal History Systems Board**
The Commonwealth's Provider of Criminal Justice Information Services

| Criminal Offender Record Information | Firearms Record Bureau | Victim Services Unit | Forms and Applications | Criminal Justice Information System | About CHSB |

**CORI**

- Certification
- Requesting Records
  - ten or more requests
  - fees
  - record keeping requirements
  - request out-of-state records
- General Grants
- Acts Protecting Children
- Reference Codes
- Frequently Asked Questions
- Forms and Applications

**News and Information**

- Fees
- Acts Protecting Children

## Fees and Fee Exemptions

Pursuant to new legislation effective July 1, 2003 amending M.G.L.c.6, §172A, the fees for CORI requests have increased to the following:

- Non-governmental certified agencies: $30.00
- Personal Requests for CORI: $25.00
- Third Party Authorization/Advocate: $25.00
- Public Request for CORI: $30.00
- Attorney Request (court order) for CORI: $30.00
- Governmental certified agencies: $ 0.00
- Fee-waived agencies: $ 0.00

Effective July 1, 2003, CORI requests submitted without the increased fee will be returned to the requestor. All fees must be made payable by check or money order to the Commonwealth of Massachusetts. All organizations are liable for payment and any late fees that may result from non-payment. All fees collected are deposited into the Commonwealth's General Fund, and are not refundable for any reason.

**Fee Exemption Process for Certified Agencies**

If the applicant is not a government agency, is already certified, and meets the requirements listed below, a fee exemption may be requested from this agency. The request should be submitted on agency letterhead and specifically address all three of the criteria listed below. Enclose any documentation that supports the request.

Although government agencies are fee-exempted, private entities that have contracts with the government or receive government funding are not necessarily considered governmental agencies for this purpose. Also, not-for-profit agencies are not necessarily entitled to a fee exemption as a result of their tax status, and must apply for consideration.

The Board has determined that a fee exemption shall serve the public interest only where:

1. the agency or entity requesting the fee exemption provides services to the elderly, children, victims of crime, medically infirm persons, or the physically or mentally challenged; and
2. more than 50% of the staff of the agency or entity are uncompensated volunteers; and
3. the agency or entity requesting the fee exemption charges

**Related Links**

- Administrative Office of the Court
- General Law Massachuset

no fee for its services or charges a nominal fee that may
be waived.

Fee Exemption Process for Personal Record Requests

Beginning July 1, 2003, the Criminal History Systems Board shall
assess a fee in the amount of $25.00 per request for a personal
criminal record request or a third party authorization request (from
attorneys and advocates) as required by M.G.L. c. 6, § 172A. A
fee shall not be imposed if an individual is determined to be
indigent as defined by section 27A of chapter 261. In order to be
considered for a waiver of the $25.00 fee, kindly review the
following provisions:

1.  For Inmates: Please provide an affidavit of indigency as
    set forth by M.G.L. c. 261, § 27A-27G together with a copy
    of all accounts for the past six months. The affidavit should
    include the following language:

    "I state under the pains and penalties of perjury that the
    statements made in this affidavit are true, that I have not
    omitted any assets that are available to me to pay
    fees, that I have not transferred any assets to avoid
    payment of the fee, and that I have not taken any action
    nor has any action been taken on my behalf to any assets
    in order
    to avoid having such assets used for payment of the fee."

2.  For individuals receiving state or federal benefits: Please
    provide proof that you are currently indigent as defined at
    M.G.L. c. 261, § 27A. You may be eligible if you are:

    (a) receiving public assistance under the aid
    to families with dependent children, program
    of emergency aid for elderly and disabled
    residents or veterans' benefits programs or
    who receive assistance under Title XVI of the
    Social Security Act or the Medicaid program,
    42 U.S.C.A. 1396, et seq.;

    (b) a person whose income, after taxes, is
    125% or less of the current poverty
    threshold established annually by the
    Community Services Administration pursuant
    to section 625 of the Economic Opportunity
    Act; or are

    (c) a person who is unable to pay the fees
    and costs without depriving himself or his
    dependents of the necessities of life,
    including food, shelter and clothing.
    But an inmate shall not be declared indigent
    unless he has complied with the procedures
    set forth above.



## PERSONAL MASSACHUSETTS CRIMINAL RECORD REQUEST FORM

If you would like a copy of your own Massachusetts criminal record, complete this form, sign it in front of a notary public, and mail it, **along with a check or money order made payable to the Commonwealth of Massachusetts in the amount of $25.00** pursuant to M.G.L. c.6, §172A and a self-addressed stamped envelope to this agency. If you are indigent you may apply for a fee-waiver pursuant to the provisions of M.G.L. c.61, §27A, please see the fee-waiver criteria below or visit our website at: www.mass.gov.chsb. Walk-in service is not available. If you are incarcerated and a notary public is not available, have an official of the correctional facility endorse same. This agency's mailing address is: the Criminal History Systems Board, 200 Arlington Street, Suite 2200, Chelsea, MA 02150 ATTN: CORI Unit.

*Please be advised that it is unlawful to request or require a person to provide a copy of his criminal offender record information, except as authorized by the Criminal History Systems Board, as per M.G.L. c. 6, §172.*

| | | |
|---|---|---|
| Last name | First name | Middle name |

| | |
|---|---|
| Maiden name | Alias |

| | |
|---|---|
| Date of birth (MM/DD/YY) | Social Security Number (requested but not required) |

| | | | |
|---|---|---|---|
| Mailing address | Town | State | Zip code |

I hereby swear, under the pains and penalties of perjury, that the information I have provided above is true, and to the best of my knowledge and belief.

| | |
|---|---|
| Signature of requestor | Date |

### AUTHENTICATION OF SIGNATURE BY NOTARY PUBLIC OR CORRECTIONAL FACILITY

_____, SS.

The above-named _____, appeared before me, the undersigned authority, this _____ day of _____, 200____ and acknowledge the foregoing signature to be made of his or her own true free act and deed.

| | |
|---|---|
| Notary public | Correctional Facility Official (give rank and title) |

| | |
|---|---|
| My commission expires | Correctional Facility Address and Phone |

EXHIBIT B

Town Clerk's Office
TOWN OF AGAWAM
36 MAIN STREET
AGAWAM, MA 01001-1837

01001+20017/1837

JCP, INC dba AUTO'S BY JOSEPH
1514 MAIN STREET
AGAWAM, MA 01001

AUTOS14  RETURN TO SENDER
:AUTOS BY JOSEPH
MOVED LEFT NO ADDRESS
UNABLE TO FORWARD
RETURN TO SENDER
010012017 1A03 14  10/04/03



AGAWAM MA SEP 23 '03
U.S POSTAGE 0.60

2

TO-2004-4

# THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

03 DEC 11 PM 12:48

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE
## OR ASSEMBLE SECOND HAND MOTOR VEHICLES
### OR PARTS THEREOF

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a............. class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance with the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? Five STAR Auto Sales

Business address of concern. No. 1514 Main St ....................................St.

...........................................................City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? .............
   ...... individual

3. If an individual, state full name and residential address.
   .... Edner Rodriguez Pimenta
   .... 849 Boston Post Rd # 94 Marlboro, MASS 01752

4. If a co-partnership, state full names and residential addresses of the persons composing it.
   ....................................................................
   ....................................................................
   ....................................................................
   ....................................................................

5. If an association or a corporation, state full names and residential addresses of the principal officers.
   President ...........................................................
   Secretary ...........................................................
   Treasurer ...........................................................

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? Yes
   If so, is your principal business the sale of new motor vehicles? No
   Is your principal business the buying and selling of second hand motor vehicles? Yes
   Is your principal business that of a motor vehicle junk dealer? No

TC-2004-+

## THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE OR ASSEMBLE SECOND HAND MOTOR VEHICLES OR PARTS THEREOF

'03 DEC 15 PM 12:48

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a . . . . . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance with the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? Five STAR Auto Sales

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business address of concern. No. 1514 Main St . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . St..

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . .

. . . . . Individual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. If an individual, state full name and residential address.

. . . . Edner Rodriguez Pimenta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . 849 Boston Post Rd #IH Marlboo, MASS. 01752 . . . . . .

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? YES

If so, is your principal business the sale of new motor vehicles? NO . . . . . . . . . . . . . . . . .

Is your principal business the buying and selling of second hand motor vehicles? YES

Is your principal business that of a motor vehicle junk dealer? NO . . . . . . . . . . . . . . .

8.  Are you a recognized agent of a motor vehicle manufacturer? . . . . NO . . . . . . . . . . . . . . .
                                                                                    (Yes or No)

If so, state name of manufacturer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9.  Have you a signed contract as required by Section 58, Class 1? . . NO . . . . . . . . . . .
                                                                                        (Yes or No)

10.  Have you ever applied for a license to deal in second hand motor vehicles or parts thereof? . YES . .
                                                                                                          (Yes or No)

If so, in what city — town  Marlboro, MASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Did you receive a license? YES . . . . . . . . . . . . . .          For what year? . . . . . . . . . . . . . . . . .
                            (Yes or No)

11.  Has any license issued to you in Massachusetts or any other state to deal in motor vehicles or parts

thereof ever been suspended or revoked? NO . . . . . . . . . . . . . . . . .
                                            (Yes or No)

Sign your name in full . . Edwin Rodriguez Promentor . . . .
                            (Duly authorized to represent the concern herein mentioned)

                            349 Boston Post Rd #7H  MARLBORO, MA
                    Residence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 01752

## IMPORTANT

EVERY QUESTION MUST BE ANSWERED WITH
FULL INFORMATION, AND FALSE STATEMENTS
HEREIN MAY RESULT IN THE REJECTION OF
YOUR APPLICATION OR THE SUBSEQUENT
REVOCATION OF YOUR LICENSE IF ISSUED.

NOTE:  If the applicant has not held a license in the year prior to this application, he must file a duplicate of
the application with the registrar.   (See Sec. 59)

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

```
                                    )
J.C.P., INC. d/b/a AUTOS BY JOSEPH, )
        Plaintiff                   )
v.                                  )
                                    )
TOWN OF AGAWAM,                     )
        Defendant                   )
                                    )
```

## AFFIDAVIT OF JUDY BEAUREGARD

I, Judy Beauregard, hereby depose and say:

1.      I am the Assistant Town Clerk for the Town of Agawam, Massachusetts.

2.      I recall having contact with Joseph Pereira of J.C.P., Inc. with regard to the issue of his Class II dealer license.

3.      I recall informing Mr. Pereira prior to the expiration of his Class II dealer license on January 1, 2004 that he should renew it even though he was planning on selling his business and transferring his license to another entity. I informed him that he should renew the license to make sure that it was current because I did not know if the Town Council would approve his request to transfer his license.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 3⁄1 DAY OF JANUARY 2005.

_Judy Beauregard_
Judy Beauregard

281344v1

4

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

```
                                     )
J.C.P., INC. d/b/a AUTOS BY JOSEPH,  )
        Plaintiff                    )
v.                                   )
                                     )
TOWN OF AGAWAM,                      )
        Defendant                    )
```

## AFFIDAVIT OF MARGARET PANDOLFI

I, Margaret Pandolfi, hereby depose and say:

1.  I am the Principal Clerk at the Office of the Town Clerk for the Town of Agawam, Massachusetts.

2.  In my position, I had contact with Joseph Pereira of J.C.P., Inc. with respect to his Class II dealer license.

3.  I recall that Mr. Pereira came into the Town Clerk's Office and discussed his interest in transferring his license to another entity, Five Star Auto. I recall informing him that he should renew his Class II dealer license before it expired on January 1, 2004 since approval by the Town Council of his transfer request was not certain.

4.  I also recall overhearing the Town Clerk, Richard Theroux, and the Assistant Town Clerk, Judy Beauregard tell Mr. Pereira that he should renew his Class II dealer license before it expired on January 1, 2004.

5.  I have reviewed the records of the Town Clerk's Office regarding the Class II dealer license of Chris' Autos in Agawam, Massachusetts. The records indicate that the Town Clerk's Office received Chris' Auto's renewal application for a Class II dealer license on December 29, 2003. As with all Class II dealer licenses, it was scheduled to expire on January 1, 2004. On January 12, 2004, the Town Clerk's Office was informed by the Collector's Office that Chris' Auto was delinquent in paying its taxes. Chris' Auto paid the outstanding taxes on January 27, 2004. Subsequently, Chris' Auto application was allowed to move forward for review by the Town Council. There was also an issue regarding a CORI check that was needed. The Town Council approved the renewal application on March 3, 2004. Following a 10-day waiting period, the license was available on March 13, 2004.

6.  I also reviewed the records pertaining to the Class II dealer license of Agawam Tire and Auto. These records indicate that the Town Clerk's Office received

281342v1

Agawam Tire and Auto's application for the renewal license on November 17, 2003. The Town Clerk's Office received the CORI information on Agawam Tire and Auto on December 2, 2003. The renewal application was placed on the agenda of the Town Council on January 5, 2004. The Town Council approved the application on January 20, 2004. Following a 10-day waiting period, the license was ready to be picked up on January 30, 2004. The records indicate that Agawam Tire and Auto picked up their license on March 3, 2004.

7.   The renewal application of Agawam Tire and Auto was received on time. The renewal application of Chris' Auto was received late in the renewal process, but before the license expired.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _3rd_ DAY OF JANUARY 2005.

_Margaret Pandolfi_
Margaret Pandolfi

**5**

Massachusetts

# Western Surety Company

## SECOND HAND MOTOR VEHICLE DEALER BOND
### (Mass. Gen. Laws Ann. 140, § 58(c))

Bond No. _____ 69623325 _____

KNOW ALL PERSONS BY THESE PRESENTS:

Effective Date: ___ January 1, 2004 ___

That we, J. C. P., Inc. dba Auto's By Joseph ,
as Principal, and WESTERN SURETY COMPANY, a corporation authorized to do surety business in the
Commonwealth of Massachusetts, as Surety, are held and firmly bound unto persons who purchase a vehicle from the
Principal and who suffer loss on account of a breach of the condition of this bond described below, in the sum of not to
exceed TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), for the payment of which well and truly to
be made, we bind ourselves and our legal representatives, firmly by these presents.

WHEREAS, the Principal is a second hand motor vehicle dealer and is required to furnish a bond or equivalent proof of
financial responsibility pursuant to Mass. Gen. Laws Ann. 140, § 58(c)(1).

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall pay the amount of actual
damages, not to exceed the amount of this bond, to any person who purchases a vehicle from the Principal and who
suffers loss on account of: (a) the Principal's default or nonpayment of valid bank drafts, including checks drawn by the
Principal for the purchase of motor vehicles; (b) the Principal's failure to deliver, in conjunction with the sale of a motor
vehicle, a valid motor vehicle title certificate free and clear of any prior owner's interests and all liens, except a lien
created by or expressly assumed in writing by the buyer of the vehicle; (c) the fact that the motor vehicle purchased from
the Principal was a stolen vehicle; (d) the Principal's failure to disclose the vehicle's actual mileage at the time of sale;
(e) the Principal's unfair and deceptive acts or practices, misrepresentations, failure to disclose material facts or failure
to honor a warranty claim or arbitration order in a retail transaction; or (f) the Principal's failure to pay off a lien on a
vehicle traded in as part of a transaction to purchase a vehicle when the Principal had assumed the obligation to pay off
the lien, then this obligation to be void; otherwise to remain in full force and effect.

PROVIDED, that recovery against this bond may be made only by a person who obtains a final judgment in a court of
competent jurisdiction against the Principal for an act or omission on which this bond is conditioned, if the act or
omission occurred during the term of this bond. No suit may be maintained to enforce any liability on this bond unless
brought within one (1) year after the event giving rise to the cause of action. This bond shall cover only those acts and
omissions described above. The Surety shall not be liable for total claims in excess of the bond amount, regardless of
the number of claims made against this bond or the number of years this bond remains in force.

This bond shall be continuous and may be cancelled by the Surety by giving thirty (30) days' written notice of
cancellation to the municipal licensing authority at _233 Allen St., Springfield, MA  01102_ _____
by First Class U.S. Mail.

Dated this ___ 1st ___ day of ____ December ____, _2003_.

J. C. P., Inc. dba Auto's By
Joseph _____ Pres ___, Principal

By: _____

WESTERN SURETY COMPANY, Surety

By: _____
Paul T. Bruflat, Senior Vice President

Form F8333-7-2003

# Western Surety Co npany

## POWER OF ATTORNEY

### KNOW ALL MEN BY THESE PRESENTS:

That WESTERN SURETY COMPANY, a corporation organized and existing un... ne l vs of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, .... .cona. Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawa..., Idaho, Illi... is, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Miss... uri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, ... o, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, U. h, Vermo... .irgi: a, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitu... ad appoint

_____ Paul T. Bruflat _____ of ___ _____       ____ Sioux Falls_____
State of _____ ___South Dakota _____ , its regularly elected _____       _ Senior Vice President _____ ,
as Attorney-in-Fact, with full power and authority hereby conferred upo.. him to sig       execute, acknowledge and deliver for
and on its behalf as Surety and as its act and deed, all of the following c  ses of doc       ...... ...wit:

Indemnity, Surety and Undertakings that may be desired by contract, or m... be given in ... ...ction or proceeding in any court of law or equity, policies indemnifying employers against loss or damage caused by the misconduct of ur em; oyees; official, bail, and surety and fidelity bonds, in any and in all cases where indemnity may be lawfully given, and with full ... ar and authority to execute consents and waivers to modify or change or extend any bond or document executed for this c pany, and ... anpic.. se and settle any and all claims or demands made or existing against said Company.

Western Surety Company further certifies that the following is a tru an... ..act copy c       iors of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or c  obligations       ne ... ctation .hall be executed in the corporate name of the Company by the President, Secretary, any Assis... ... nary, Trea:       ... or ... Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice Pre... ...ent, Secret:       ...any ...sistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, ...licies, or u       ...kin;...t the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, under... P owers of       ...or obligations of the corporation. The signature of any such officer and the corporate seal may be printed by ..... ...

In Witness Whereof, the said WESTERN SURETY COMP... ...e caused       ...ad ... nts to be executed by its _____ Senior Vice President_____ with the corporate seal affixed this ...       ... day of       ... __ ...... __ 2003 _____

ATTEST                                                                                           STE...       ... ... ...ETY COMPANY

_____ J. Nelson _____
Assistant Secretary                                                                   ...orul ... .junior Vice President

STATE OF SOUTH DAKOTA }
                                             } ss
COUNTY OF MIN...EHAHA }

On this _1st_ _____ day of _December_____, 20.3       , before :       ...  ...sonally appeared
_____ _____ Paul T. Bruflat _____ _____ and :       ...       ... _____ Seni.r Vice President ____
who, being by me ...ly sworn, acknowledged that they signed the a .....       ...ver of At:       ...  ...dge... .nd instrument to be
and Assistant Sec. ..ary, respectively, of the said WESTERN SUr...       ...PANY,
the voluntary act ... d deed of said Corporation.

+55555555555555555555555555555+
**D. KRELL**
NOTARY PUBLIC
(SEAL) **SOUTH DAKOTA** (SEAL)
+5555555555555555555555555+
My Commission Expires November 30, 2006

_____ ...e l l _____
Notary Public

_Form F1975-4-2002_

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. *04-1217*

| | |
|---|---|
| J.C.P., INC. d/b/a AUTOS BY JOSEPH,<br>Plaintiff | ) *12-22-04*<br>) *allowed*<br>) *Vellis* |
| v. | ) |
| TOWN OF AGAWAM,<br>Defendant | ) |

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**

DEC 2 2 2004

CLERK-MAGISTRATE

## EMERGENCY MOTION OF THE DEFENDANT, TOWN OF AGAWAM, TO CONTINUE THE HEARING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Now comes the defendant, Town of Agawam, and respectfully requests that the hearing on plaintiff's motion for a preliminary injunction be continued. It is currently scheduled for December 22, 2004 at 2:00 p.m. As reason for this motion, the defendant states as follows.

The defendant was served with the motion for a preliminary injunction via the clerk's office at 10:50 a.m. on December 21, 2004.[1] The undersigned counsel for the defendant was not advised of this matter until 4:45 p.m. on December 21, 2004. As a result, the undersigned counsel has not had sufficient time in which to properly review this matter and prepare a defense. In particular, there are several files at Town Hall that need to be reviewed in order to prepare a proper defense. Moreover, the undersigned counsel will be unavailable to attend the hearing on December 22 due to a previously scheduled deposition, which is expected to take no less than a full day, in a matter known as Lake Grove at Maple Valley v. Town of Wendell that is pending in the United States District Court and involves counsel traveling from Boston and an out of town witness who took the day off from work to attend.

---

[1] Town Counsel received a faxed copy at 5:30 p.m. on December 20, 2004.

280557v1

** TOTAL PAGE.04 **

In addition, the defendant is unaware of any reason why this motion must be decided on such short notice. That is, the license which is at issue expired on December 31, 2003. The plaintiff has taken no action since July 2004 to have it restored. Therefore, to continue this matter for only a few days will not irreparably harm the plaintiff.

In summary, due to the short opportunity to prepare for this hearing, and the undersigned counsel's unavailability to attend the hearing, the defendant respectfully requests that the hearing be continued to a mutually convenient date for the Court and all counsel. The undersigned counsel has conferred with counsel for the plaintiff and both can be available on December 24, 28, 29 and 30. In addition, counsel for the defendant can be available on December 23, but has been advised by counsel for the plaintiff that he is scheduled to be in Dudley District Court in the morning and may not be available by 2:00 p.m.

WHEREFORE, the defendant respectfully requests that the Court continue the hearing on this matter to a date that is mutually convenient to the Court and the parties.

The Defendant
Town of Agawam

By Their Attorneys
MORRISON MAHONEY LLP

Carole Sakowski Lynch, BBO#547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA 01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

A true copy.

Attest:

_Barbara Holubecki_
Deputy Assistant Clerk

2

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on ___ 12/22/04.

280557v1

Commonwealth of Massachusetts
County of Hampden
The Superior Court

CIVIL DOCKET# **HDCV2004-01217**

RE:   **J C P Inc d/b/a v Town of Agawam**

TO:   Thomas F. Reilly, Attorney General
      Consumer Protection Division
      One Ashburton Place
      Boston, MA 02108-1698



## NOTICE OF COMPLAINT/JUDGMENT FILED UNDER CHAP. 93A

Enclosed is a copy of the Complaint/*Judgment in the above entitled action seeking relief pursuant to G.L. Chap. 93A, filed on **12/20/2004** in the Hampden Superior Court.

Dated at Springfield, Massachusetts this 21st day of December, 2004.

                                    Marie G. Mazza,
                                    Clerk of the Courts

                          By:

                          ....Sheree L. Cope....
                                    Sheree L. Cope
                                    Deputy Assistant Clerk

ENC.

A true copy.
Attest:
      _Barbara Holubecki_
      Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.: 04-1217

J.C.P., Inc., d/b/a AUTOS BY JOSEPH,    )
        Plaintiff    )
            )
v.    )
            )
            )
TOWN OF AGAWAM,    )
        Defendant    )

HAMPDEN COUNTY
SUPERIOR COURT
FILED

DEC 2 0 2004

CLERK-MAGISTRATE

## PLAINTIFF'S MOTION FOR A SHORT ORDER OF NOTICE ON ITS MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, J.C.P., Inc. hereby moves this Court for a Short Order of Notice that its Motion for a Preliminary Injunction shall be heard at a time convenient to this Court, with the plaintiff requesting either Tuesday, December 28, 2004, at 2pm or Wednesday, December 29th at 2pm. As grounds for this Motion, the plaintiff has been unfairly deprived of sufficient notice from the Town of Agawam as well as a full hearing and a decision on his application for renewal for his Class II used car dealer's license and is suffering irreparable harm. Therefore, plaintiff's motion for preliminary injunction should be heard as soon as possible to avoid irreparable harm to the plaintiff. In further support of this motion, Plaintiff files herewith a *Verified Complaint*, a *Motion for a Preliminary Injunction and Memorandum in Support,* all of which are incorporated herein by reference.

    Any hardship which would be placed on the Defendant by the allowance of this Motion is outweighed by the hardship that will accrue to Plaintiff if it is denied.

    **WHEREFORE**, Plaintiff respectfully requests that this Motion for a Short Order of Notice be allowed.

3

The Plaintiff,
By Its Attorney,

Joseph M. Pacella, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 638018

11728-040730\81665.wpd



A true copy.
Attest:

Barbara Holubecki
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.: 04-1217

J.C.P., Inc., d/b/a AUTOS BY JOSEPH, )
        Plaintiff )
         )
v. )
         )
TOWN OF AGAWAM, )
        Defendant )

*HAMPDEN SUPERIOR COUNTY COURT FILED DEC 2 0 2004 CLERK-MAGISTRATE*

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Based on the allegations of the Verified Complaint, the plaintiff requests this court to issue a preliminary injunction requiring the defendant, forthwith, to issue a Class II Dealership License to the plaintiff so that he may continue to sell used motor vehicles at the subject location pending the outcome of this matter. In addition to the Verified Complaint and exhibits which is hereby incorporated by reference, the plaintiff has videotapes of the hearings involved and will supplement at hearing.

### Standard

The general standards governing the issuance of a preliminary injunction are well defined. The Plaintiff must satisfy this Court that it is faced with the prospect of irreparable harm should the preliminary order not issue, that on a balancing of the harm to both parties the equities favor the Plaintiff, that the Plaintiff has a reasonable likelihood of success on the merits, and that there is no adverse affect to the public interest should the order issue. *See Packing Industries Group, Inc. v. Cheney*, 380 Mass. 609, 616-622 (1980). "[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the

*B.H.f. 1/26/05    1-26-05*
*Denied w/o prejudice; see memo + decision*
*(veli'd'l)*
*attent Out'n'Can w/o Jen*

2

merits. If the judge is convinced that failure to issue the injunction would subject the moving party

to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk

of irreparable harm which granting the injunction would create for the opposing party  [and] . . .

where the balance between these risks cuts in favor of the moving party . . . a preliminary injunction

properly issue. *Packaging Industries Group, Inc. v. Cheney*, 405 N.E.2d 106, 380 Mass. 609, 617

(1980) The risk of harm to public interest may be considered in appropriate cases. *Brookline v.*

*Goldstein*, 388 Mass. 443, 447, 447 N.E.2d 641 (1983).

### Reasonable Likelihood of Success

In support of this action, the plaintiff states that it is likely to succeed on the merits on any

number of issues which would require that a license be issued and/or that this mater be returned for

a hearing. The plaintiff received insufficient notice as the town took no steps to contact the plaintiff

or his agents at the other addresses and numbers provided to the town after the notice was returned

to the town undelivered after five days. The plaintiff received mail but was not at the dealership on

a daily basis due to a reoccurrence of cancer. Despite the fact that he never received notice, the

plaintiff was ready willing and able to submit a renewal application on December 23, 2004 but was

coerced and relied on the Clerk's misrepresentation that he did not need to renew the license at that

time since a transfer was already submitted. The plaintiff's application would have been acted on

prior to the transfer had he not been given the wrong advice by town officials. But for the plaintiff,

Agawam has never not allowed a Class II license not to be renewed late.[1]  Secondly, the plaintiff

---

[1] One letter was sent in September telling the Plaintiff that he had to renew by November 21st but it was returned after five days to the town and no further steps were taken in the two months despite the plaintiff and his agent have had phone numbers and other contact information on file. Another used car dealer, Agawam Tire and Auto was allowed to apply in late December and was sent a notice in February urging him to come down and complete his application, he had a hearing in

2

Agawam has long maintained that the license stays with the dealer who held it if a transfer is not approved and the letter of surrender in this case was prepared by the Town Clerk or his staff, whereby any inconsistencies with the town's normal form letter of surrender should be construed against the town.

### Irreparable Harm and No Negative Affect to Public Interest

The harm to plaintiff is irreparable in that the plaintiff will lose business value and profits exponentially as his customer base in Agawam will erode if he is not allowed to operate, as the property has been left to appear as if abandoned. Moreover, plaintiff has been a respected used car dealer who did not have so much as one violation or complaint with the town in his four years at that same location. There is little risk of harm to the public interest by granting this preliminary injunction. In fact, it would reduce the plaintiff's claim for damages against the Town of Agawam, which is in the public interest. The plaintiff clearly is on notice that the license would be issued pending the outcome of this case and that any intermittent expenses incurred or other steps taken would be at his own risk.

WHEREFORE, plaintiff requests that the requested preliminary injunction be issued.

The Plaintiff,
By Its Attorney,



Joseph M. Pacella, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 638018



11728-040730\81403.wpd

A true copy    4

Attest:

*Barbara Holubecki*

Deputy Assistant Clerk

| CIVIL ACTION COVER SHEET | Docket No.(s) 04-1217 | Trial Court of Massachusetts Superior Court Department County: Hampden County |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| J.C.P., Inc., d/b/a Autos By Joseph | Town of Agawam |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Joseph M. Pacella, Esquire<br>Egan, Flanagan and Cohen, P.C.<br>67 Market Street - P.O. Box 9035<br>Springfield, MA 01102-9035 (413) 737-0260<br>Board of Bar Overseers Number:        638-18 | |

## Origin code and track Destination

Place an x in one box only:

☒ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231, s.104 (Before trial) (F)
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order
☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D13 | Declaratory Judgment G.L. c. 231A | ( A ) | ( X ) Yes      (   ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . $ ...........................
   2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . $ ...........................
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . $ ...........................
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . $ ...........................
   5. Total other expenses (describe) . . . . . . . . . . . . . . . . . $ ...........................
                                                      Subtotal   $ ...........................
B. Documented lost wages and compensation to date . . . . . . . . . $ ...........................
C. Documented property damages to date . . . . . . . . . . . . . $ ...........................
D. Reasonably anticipated future medical and hospital expenses . . . . $ ...........................
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . $ ...........................
F. Other documented items of damages (describe) . . . . . . . . . . . $ ...........................
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
                                                                 $ ...........................
                                                      TOTAL    $ ...........................

*HAMPDEN SUPERIOR COUNTY FILED DEC 20 2004 CLERK-MAGISTRATE*

*A true copy.*
*Attest:*
*Barbara Holubecki*
*Deputy Assistant Clerk*

### CONTRACT CLAIMS

claim(s):
nip license.

|  | TOTAL | $  50,000 |
|---|---|---|

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record                           DATE:   December 17, 2004

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

11728-040730\81821.wpd

# Commonwealth of Massachusetts

HAMPDEN  , ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION

No.  04-1217

J.C.P., INC., d/b/a AUTOS BY JOSEPH , Plaintiff(s)

v.

TOWN OF AGAWAM , Defendant(s`

### SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon Egan, Flanagan and Cohen, P.C. Joseph M. Pacella, Esquire plaintiff's attorney, whose address is 67 Market Street, P.O. Box 9035, Springfield, MA. 01102 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Springfield either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the motion complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Springfield in the __B__ session without jury of our said court on __Wednesday__ the __22nd__ day of __December__ A.D. 2004 , at __2:00__ o'clock p.m.., at which you may appear and show cause why such application should not be granted.

BARBARA J. ROUSE, ESQUIRE

Witness, ~~....................~~ Esquire, at Springfield the __twentieth__ day of __December__ in the year of our Lord ~~one thousand nine hundred and~~ two-thousand four.

*Marie D. Mazza*
CLERK/MAGISTRATE

### NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When ~~more than one~~ defendant is involved, the names of all defendants should appear in the ca~~ption. If a separate sum~~mons is used for each defendant, each should be addressed to the

tm/td

Form No. 4

A true copy.

Attest:

*Barbara Holubecki*
Deputy Assistant Clerk

4

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.:

**04-1217**

J.C.P., Inc., d/b/a AUTOS BY JOSEPH, )
       Plaintiff )
        )
v. )
        )
TOWN OF AGAWAM )
       Defendant )

HAMPDEN
SUPERIOR COUNTY
COURT
**FILED**
DEC 20 2004
CLERK-MAGISTRATE

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. The Plaintiff, J.C.P., Inc. d/b/a Autos by Joseph, (hereinafter "Pereira") is a Massachusetts corporation doing business as a used car dealership with a usual place of business at 1514 Main Street, Agawam, Massachusetts ("dealership"). Its President is Joseph Pereira.

2. The Defendant, Town of Agawam, (hereinafter "Agawam") is a body corporate and politic with perpetual succession under the name "Town of Agawam," having its offices at 36 Main Street, Agawam, Massachusetts, 01001.

### FACTUAL BACKGROUND

3. Since being approved in 1999, Pereira has held a Class II Dealership License and operated the dealership on property that is owned by Fran and Karen Connor and Diane and Michael Biscaldi (together referred to as "owners").

4. Pereira and his dealership have always been in good standing with Agawam, having never been cited for any code, ordinance or other violation nor have there been any consumer complaints.

5. Pereira was duly licensed to sell used cars in 2003, having a Class II Dealership License issued by Agawam.

6. In 2003, Joseph Pereira was undergoing chemotherapy and other treatment for a reoccurrence of cancer and needed to spend more time focusing on his medical needs.

7. Pereira sought to transfer the leasehold and his license for the dealership to another party in the fall of 2003 and asked the owners, who agreed, to assist him as his agent.

No. of Pits. 1
Fee Paid - $240
Surcharge Paid - $15
Security Fee - Paid - $20
Received by ___

1

8.    The owners, acting through Fran Connor, advertised and marketed the dealership and obtained an interested dealer, Five Star Auto Sales, who sought a transfer of Pereira's license.

9.    Pereira intended to maintain the dealership until a transfer was accepted whether it be Five Star Auto or another dealership.

10.    As such, Pereira purchased a $25,000.00 surety bond for the year of 2004, which was effective December 1, 2003.

11.    The abutters list was also certified on December 8, 2003.

12.    On December 16, 2003, Five Star Auto applied for a transfer of J.C.P., Inc.'s Class II dealership license. See attached Exhibit B. Five Star Auto's principal was a car dealer who was presently licensed and had operated a Class II used car dealership for eight (8) years in the town of Marlborough, Massachusetts.

13.    Five Star Auto's transfer package was submitted with a form letter of surrender signed by Pereira, which is identical to the form attached as Exhibit C which comes with the transfer package. See Exhibit C.

14.    Acting as the plaintiff's agent, Fran Connor repeatedly discussed the time table and procedure for transferring the license with town officials and on December 23, 2003, Fran Connor went into the Clerk's office to find out if anything else was needed and if a hearing had been set for the transfer application of Five Star Auto. The Town Clerk of Agawam, Richard Theroux, overheard Mr. Connor and immediately became confrontational. See Exhibit D, Affidavit of Fran Conner, which is hereby incorporated by reference.

15.    Pereira never received any letter or other communication directly or through his agent from Agawam telling him to renew the license by the close of November. Pereiral received mail at the property through the end of the year and into 2004, some of which Fran Connor would deliver to him. Nor did Agawam notify the Registrar that Pereira's license had been revoked on January 1, 2004 as required by c. 140, § 59.

16.    Agawam provided insufficient notice to Pereira under Massachusetts law including but not limited to c. 140, § 59. Agawam had plenty of time before the November deadline to provide additional notice to Pereira after the letter was returned and purposefully did nothing, despite the fact that additional communications were made to other dealers to encourage the completion of their application in the past.

17.    On December 23, 2003, Pereira was called by the owners and went immediately down to Town Hall to complete an application for renewal. Town officials assured Pereira and the

owners that J.C.P., Inc. did not have to renew the license at that time as the transfer had already been filed.

18. After reviewing the transfer application, town officials again told Pereira and the owners that Pereira only needed to sign another letter of surrender as they could not find one with the application.

19. The Clerk then went and returned with a typed up transfer letter that he prepared or had prepared. Pereira was, at first, concerned that this was not on the town's form but signed the letter after the town officials agreed with him that the license would remain with Pereira if Five Star Auto was denied the transfer. See Exhibit A.

20. Pereira completed and executed the renewal application by asking for and copying verbatim his past application for 2003. This application was not acted upon at that time, and Pereira submitted the application but believes that it was not officially stamped until May of 2004 after he had gone down in March or April of 2003, seeking to pick up the 2004 license.

21. On or about February 18, 2004, the Agawam City Council ruled against the transfer of J.C.P., Inc. d/b/a Autos by Joseph's transfer of the Class II Dealership License to Five Star Auto Sales. See transcript enclosed as Exhibit E. Agawam not only entertained the transfer but the council even told a gentleman who applied for a license earlier that night that there were no licenses available. Had Agawam felt that Pereira's license was not renewed, then there was no license as of January 1, 2004. As such, Five Star Auto should never have had a hearing and the person that applied earlier that night should have been eligible for consideration for the license.[1]

22. Under information and belief, Agawam's unstated position prior to the time of the February 18th hearing was that Pereira's license would be lost to attrition if Five Star Auto was denied a license as Pereira's letter of surrender was not on the town's form and could be interpreted as having been a non-conditional surrender to Five Star Auto. The council was likely not aware that Exhibit A was prepared by its Clerk.

23. Pereira and the owners were told by Five Star Auto's principal that his criminal record was unfairly made a substantial issue despite the fact that all of his cases were dismissed upon payment of court costs and that he had heard from Councilor Rossi, a former police officer, through the clerk's office that he would not be found to be a "proper" person for a license as a

---

[1]There was also another person that applied on the night that Pereira's renewal application was taken off of the agenda that was told that there were no licenses available, despite the fact that the law seeking to reduce the number of licenses was still being drafted and had not been passed in final form.

result.

24. It is important to note that Agawam was in the process of creating an ordinance that would reduce the number of licenses from 30 to 20 within the town. Licenses would be grand fathered but, after the law was finalized, no one would be issued a license until the total number fell to nineteen.

25. Except for Pereira, Agawam had never before not allowed a Class II dealer to renew the license late. In fact, many used car dealers have renewed and/or picked up their Class II licenses late without a problem, including Chris' Autos and Agawam Tire and Auto which have had their licenses renewed several months late.

26. While some town officials thought that it was inappropriate that the license holders could transfer their license to another dealer if accepted and that they should first surrender it to the town, this is the way it has always been in Agawam. To do otherwise, would restrict Sarat Ford or any other used car dealers from ever selling the property interests in their business.

27. After being told when he went to pick up the license that the license was in the folder but had a "hold on it" and that he needed to re-apply as a renewal, Pereira then re-activated the application that he filled out in December and attended a hearing in July of 2004, where no action was taken and the matter was ruled "off the agenda" by President Rheault.

28. At the July town meeting, Pereira was told by Councilor Rossi that the application was for a new license and not for renewal so it was improper since it needed to be for a new license. Pereira was told that no action would be taken since the law department had clarified that there was no current license there and that he should speak with them.

29. After that, I went down to the clerk's office to pay for the renewal and to get my license. I was told that the new license was sitting in the folder but that there was a "hold on it". I again spoke to Mr. Theroux who told me to that I the license was "pending" and I had to apply to the Licensing Board, but that this should be no problem as "we've always renewed them late in the past for people."

30. After the plaintiff's application for renewal was submitted, a Public Hearing was held by the Agawam Town Council in June of 2004, at which the language of the ordinance concerning Class II Dealership Licenses was amended so that all applicants must comply with Massachusetts General Laws Chapter 140 §§ 58 and 59. The Agawam Town Council further ruled that the number of new applications for Class II Dealership Licenses will be restricted to twenty (20) unless the licenses are already in existence. Councilor magovern made it clear that this ordinance did not apply to licenses that are surrendered as part of the transfer process, stating that if the Licensing Committee denies the transfer of the Class II Dealership License to

4

the new owner, then the Class II Dealership License remains with the <u>original</u> owner and is not "surrendered" to the Town of Agawam.

31. During the July Public Hearing, Pereira was initially told by Councilor Rossi that he could not have a hearing as the license had been "surrendered" to the Town of Agawam because Pereira failed to apply for a renewal. Therefore, J.C.P. "surrendered" its Class II Dealership license to the Town of Agawam and could not seek to "transfer" the license to Five Star Auto Sales.

32. The Agawam Town Council stated that the Town of Agawam's legal department had clarified that Pereira could not renew the license because it was surrendered and would have to apply for a new license. It was ruled that Pereira's application for renewal would be "off the agenda", and I was told to "go back to Town Hall thats all I can yell ya" by Councilor Rossi.

33. Pereira did not receive any notice that its Class II Dealership License had expired from the Town of Agawam or otherwise.

34. Councillor Rossi has since told Pereira that he would be better off seeking a license for another location, as no one is going to get that license.

35. Having been license for several years at this location, there was no question that Pereira was not still a "proper person to engage in the business specified in section fifty-eight...that the business was his principal business, [and] that he has available a place of business suitable for that purpose" pursuant to c. 140 § 59.

36. As such, Pereira was denied a hearing and decision on his application pursuant to Massachusetts law, including but not limited to c. 140 § 59.

37. It is very important to Pereira and his family that J.C.P., Inc. is allowed to renew this license and operate the business due to the lost profits that have occurred and continue to occur as a result of this matter.

38. Had Pereira been told on December 23, 2003 that he had failed to renew and that his license would be in jeopardy, he would have insisted that the renewal process be completed at that time. It would have been unfair not to allow his application at the next hearing, as Agawam had always done so in the past and there were no prior or intermittent violations by his dealership.

39. Pereira was unfairly and deceptively denied a license, as town officials misled him in order to delay and prejudice his application for renewal.

40. Pereira relied on the statements made by town officials to his detriment and was damaged.

41. Pereira estimates that the dealership has lost between $5,000 and $10,000 per month in profit since April of 2004.

42. Agawam's actions were arbitrary and capricious and were not supported by substantial evidence.

43. Agawam's actions did not constitute fair treatment of Pereira and was an improper deprivation of the license.

## COUNT I
### (Declaratory Relief / Injunctive Relief)

44. The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45. J.C.P. did not surrender its Class II Dealership License to the Town of Agawam.

46. The Plaintiff, hereby requests that this Court (1) enter a preliminary injunction ordering the Town of Agawam to license the plaintiff to operate as a Class II used car dealer at the dealership and (2) enter a permanent injunction or to otherwise declare and adjudicate the rights of the Plaintiff as they pertain to the Class II Dealership License.

    WHEREFORE, the Plaintiff requests the following order:

    (i)    that Agawam reinstate and/or issue the Class II Dealership Licence for J.C.P., Inc. d/b/a Autos by Joseph for 2004 to the present upon payment of the required fees;

    (ii)   that, in the alternative, the Court remand this matter to the Town of Agawam to order that a hearing be held to judge whether or not the application if submitted on December 23, 2003 should be renewed.

## COUNT II
### (Civil Rights)

47. The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. Agawam's actions constituted a violation of the plaintiff's rights protected under the Massachusetts Civil Rights Act, G.L. c.12, in that he was deprived of his employment and of his right to due process of law and equal protection of the laws.

49. Agawam's actions constituted a violation of the plaintiff's rights protected under Title 42 USC

§1983 and the Untied States Constitution in that he was deprived of his license and of his right to due process of law and equal protection of the laws, and was not afforded fair treatment, having been coerced and intimidated.

Wherefore, plaintiff demands judgment against the defendants in an amount to be determined by the jury, plus punitive damages, plus the costs of this litigation and his reasonable attorney's fees.

## COUNT III
### (Misrepresentation)

50.  The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51.  Agawam's is vicariously liable for the actions of town officials that made false statement to the plaintiff about a fact that a reasonable person would consider important to the decision that the plaintiff was about to make; that when the defendant made the statement, the defendant either knew that the statement was false, or recklessly made the statement by willfully disregarding its truth or falsity; that the defendants made the false statement with the intention that the plaintiff would rely on that statement in making its decision; that in making the plaintiff's decision, it did in fact rely upon the defendants' statement as true, and that its reliance was reasonable under the circumstances; and that plaintiff suffered some financial loss as a result of relying on the defendants' false statement.

WHEREFORE, Plaintiff request that this court enter judgment that the Defendant has by fraud, deceit and misrepresentation damaged the Plaintiff and that judgment enter in favor of the Plaintiff and to award just and reasonable damages, plus attorney's fees, costs and interest as provided by law.

## COUNT IV
### (M.G.L. c. 93A)

52.  The Plaintiff, J.C.P. Inc. d/b/a Autos by Joseph, reaffirms and realleges the allegations in paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.  The Defendant engaged in unfair and deceptive practices in engaging in fraud and/or deceit when the Town Clerk, acting on behalf of the Town, specifically instructed the Plaintiff to submit a "transfer" package to the Town of Agawam in lieu of renewing the Class II Dealership License, while anticipating the amendment to the above referenced ordinance.

54.  As a result, Pereira has and continues to lose more than $50,000.00 in profits.

WHEREFORE, the Plaintiff requests this Court award the Plaintiff damages against the Town of Agawam, double or trebled as the Court determines, plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

                                        The Plaintiff
                                        J.C.P., Inc., d/b/a Autos by Joseph
                                        By its attorney

December 13, 2004

                                        Joseph M. Pacella, Esq., BBO# 638018
                                        Egan, Flanagan and Cohen, P.C.
                                        67 Market Street, P.O. Box 9035
                                        Springfield, MA 01102-9035
                                        (413) 737-0260 ext. 131
                                        (413) 737-0121 (fax)



A true copy,
Attest:
Barbara Holubecki
Deputy Assistant Clerk

8

## **VERIFICATION**

### *The Commonwealth of Massachusetts*

Hampden, ss.

I, Joseph Pereira, President of J.C.P. Inc. d/b/a Autos by Joseph, the Plaintiff in the above-entitled action, state under the pain and penalties of perjury, that I have read the foregoing Complaint, and know the contents thereof, and that the same are true to my own knowledge.

December _13_ , 2004

Joseph Pereira, President

11728-040730\79725.wpd

9

A

12-23-03

I hereby surrender my Class II Dealers license from 1514 Main St., Agawam, MA to Ednei Pimenta.

Joseph Pereira

'03 DEC 23 PM 3: 45

TOWN CLERK OF THE
AGAWAM, MASS.

B

THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF AGAWAM

03 DEC 10 PM 12: 48

TOWN CLERK OFFICE
AGAWAM, MASS.

# APPLICATION FOR A LICENSE TO BUY, SELL, EXCHANGE OR ASSEMBLE SECOND HAND MOTOR VEHICLES OR PARTS THEREOF

I, the undersigned, duly authorized by the concern herein mentioned, hereby apply for a . . . . . . . . . . . . . class license, to Buy, Sell, Exchange or Assemble second hand motor vehicles or parts thereof, in accordance with the provisions of Chapter 140 of the General Laws.

1. What is the name of the concern? Five STAR Auto Sales . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business address of concern. No. 1514 Main St . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . St.,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . City — Town.

2. Is the above concern an individual, co-partnership, an association or a corporation? . . . . . . . . . . . . .
. . . . . . individual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. If an individual, state full name and residential address.
. . . . Edner Rodriguez Pimenta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . 849 Boston Post Rd #9H Marlboro, MASS 01752 . . . . . . . . . .

4. If a co-partnership, state full names and residential addresses of the persons composing it.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5. If an association or a corporation, state full names and residential addresses of the principal officers.

President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Treasurer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Are you engaged principally in the business of buying, selling or exchanging motor vehicles? Yes . .

If so, is your principal business the sale of new motor vehicles? NO . . . . . . . . . . . . . . . . . . . .

Is your principal business the buying and selling of second hand motor vehicles? Yes . . . . . . . . . .

Is your principal business that of a motor vehicle junk dealer? NO . . . . . . . . . . . . . . . . . . . . . .

8.  Are you a recognized agent of a motor vehicle manufacturer? .. _NO_ ................
(Yes or No)

If so, state name of manufacturer ....................................................

9.  Have you a signed contract as required by Section 58, Class 1? _NO_ ...........
(Yes or No)

10.  Have you ever applied for a license to deal in second hand motor vehicles or parts thereof? _YES_
(Yes or No)

If so, in what city — town  _Marlboro, MASS_ ...........................................

Did you receive a license? _YES_ .................            For what year? ...............
(Yes or No)

11.  Has any license issued to you in Massachusetts or any other state to deal in motor vehicles or parts
thereof ever been suspended or revoked? _N.O._ ............ ......
(Yes or No)

Sign your name in full.. _Edwin Rodriguez Pimento_ ...
(Duly authorized to represent the concern herein mentioned)

_849 BOSTON POST RD #7H  MARLBORO, MA_
Residence................................... _01752_

## IMPORTANT

EVERY QUESTION MUST BE ANSWERED WITH
FULL INFORMATION, AND FALSE STATEMENTS
HEREIN MAY RESULT IN THE REJECTION OF
YOUR APPLICATION OR THE SUBSEQUENT
REVOCATION OF YOUR LICENSE IF ISSUED.

NOTE: If the applicant has not held a license in the year prior to this application, he must file a duplicate of
the application with the registrar.   (See Sec. 59)

C

TOWN CLERK'S OFFICE
TOWN HALL
36 MAIN STREET
AGAWAM, MA 01001

DEAR TOWN CLERK:

PLEASE BE ADVISED THAT IN THE EVENT THAT _____

_____ IS APPROVED FOR A CLASS _____ DEALER

LICENSE, I WILL SURRENDER MY EXISTING LICENSE.

IF ANY ADDITIONAL INFORMATION IS NEEDED, PLEASE FEEL FREE TO
CONTACT ME AT _____.

SINCERELY YOURS,

_____                    _____
                                                   DATED

D

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

Superior Court Department
Civil Action No.:

J.C.P., Inc., d/b/a AUTOS BY JOSEPH,    )
           Plaintiff    )
                                    )
v.    )
                                    )
TOWN OF AGAWAM,    )
           Defendant    )

## AFFIDAVIT OF FRAN CONNOR

Now comes Fran Connor and, on oath, deposes and says:

1.     My wife, Karen Connor, and I own the subject property located at 1514 Main Street in Agawam, Massachusetts with Michael and Diane Biscaldi, on which the dealership has been located for the past fourteen (14) years. I have served as the manager / owners' representative for this property.

2.     In 1990, I originally obtained the Class II Dealership License for this property. As part of this process, the lot was improved in compliance with and under the direction of the Town of Agawam licensing commission and Building Department to operate solely as a used car dealership.

3.     This lot has a small building and is paved, fenced and landscaped to serve exclusively as a car dealership.

4.     Since January 1, 2000, Joseph Pereira of J.C.P., Inc. has held a Class II Dealership License in Agawam and operated the dealership on our property called Autos by Joseph (hereinafter together referred to as "Pereira").

5.     Pereira has been a respected member of the Agawam business community. We have never been notified by the Town of Agawam or anyone that there was any problem, consumer complaint or violation of any nature.

6.    We have repeatedly been told by neighbors of the property, residents of the Town of Agawam and/or customers of Pereira that the dealership was a clean, trustworthy and respected business which served the public well by selling quality used vehicles to consumers who could not afford a new car.

7.    At or around the beginning of September in 2003, Pereira approached me, explained that he was having complications with his recovery from cancer treatments and asked if I would assist him in trying to locate someone to transfer the license and take over his lease of the property. I agreed and Pereira authorized me to act as J.C.P., Inc.'s agent in this regard.

8.    Following that conversation, I immediately went down to the clerk's office to ask what was needed to transfer the license and was directed to speak with the building inspector.

9.    Almost every other week thereafter, I stopped in to meet with Mr. Urbinati, the building Inspector, to find out for Mr. Pereira and ourselves as to what was needed to make sure that the license at this location was properly transferred. At first, I gave the Town my address and all of my telephone numbers, including my cellular phone, and asked them to contact me on either the dealership or the property owners' behalf should there be anything needed or which concerned the license at any time.

10.   I advertised the property. I kept the Town updated as to potential dealers that I was speaking with on Pereira's behalf and for months, was repeatedly told that the license was in good shape and that nothing was needed from the dealership except the new applicant's paperwork when the time came.

11.   On December 16, 2003, Five Star Auto applied for a transfer of J.C.P., Inc.'s Class II dealership license. Five Star Auto's principal was a car dealer who was presently licensed and had operated a Class II used car dealership for eight (8) years in the town of Marlborough, Massachusetts.

12.   I have since been told that a letter was sent to the dealership and returned as having no forwarding address. Despite all of the communications that were made and all of my contact information being on file, neither Joe Pereira nor I, as his agent, were ever notified that the Town of Agawam had sent him this letter telling him to renew the license nor were any other efforts made to contact either of us. In fact while he was sick, I routinely picked up mail for Joe and brought it to him and never saw such a letter.

13.   On December 23, 2003, I went down to check on the transfer application of Five Star Auto. As I attempted to find out the hearing date, I was overheard and questioned by the Town Clerk, Richard Theroux, who was very confrontational.

14.    Mr. Theroux said "what application is that?" After he was told and had confirmed that I was not the license holder he said, "can't help ya pal". I said, "what do you mean you can't help me?" He told me "this license is none of your business." I responded that "what do you mean its none of my business? I am one of the property owners" and told him that Joe had authorized me to do this for him since he had been sick. I tried to explain what was going on with the proposed transfer and all of the efforts that we had been making to keep the town informed and to do everything that was asked of us.

15.    In an attempt to explain the situation and in the hopes that Mr. Theroux would calm down, I also told him that we had been working with Mr. Urbanati to deal with the requested transfer of the license on this. Clerk Theroux immediately snapped at me and began to scream at me in front of the assistants in the office: "I don't give a shit who you've been talking to". I said "don't talk to me like that" and he said "I just did." The clerk then went into his office and slammed his door so hard that I thought that I heard the glass shatter.

16.    As I went outside of the building to avoid this treatment, I was already on the phone with Mike Biscaldi telling him to call Joe to tell him to come down and to get the lawyer on the phone because the Town is playing games with the license. I am certain that people employed by the town heard this. Shortly after I had left, I received a call on my cellular phone from Mr. Urbanati, telling me to come back and that everything would be worked out. I assumed that he must have heard the Clerk yelling from his office upstairs and came down as a result. Mr. Urbanati was outside with Clerk Theroux waiting for me when I drove into the Town Hall. Theroux was very apologetic and told us that, "I did not realize you were working with Nick [Urbanati]".

17.    Mike Biscaldi arrived and then Joe Pereira. Joe began to fill out the renewal application and we were insisting that we would just as soon as see him pay the $100.00 now even though it was normally paid when the license was picked up. We were finally able to calm down, as they kept assuring us that Pereira did not need to renew the license because the transfer had already been filed before the end of the year.

18.    Our clear understanding from this meeting was that, since the application was already filed to transfer the license on December 16th, it was not necessary for J.C.P., Inc. to renew its Class II Dealership License. We entirely relied on what was said by the town's officials. After reviewing the transfer application, they again told us that Joe only needed to sign another letter of surrender as they could not find one with the application.

19.   Clerk then went and returned with a typed up transfer letter that he prepared or had prepared. See Exhibit A to the Verified Complaint. As we were certain that we could rely on this information and that everything would be alright, things became more amicable. The Clerk told us that he was sorry but that they had just "dealt with the V&F shit" and that he was still a little on edge over that. V&F is another Class II delaer in Agawam. I even joked with the clerk telling him "sorry to get you upset, how much do I owe you for the glass in your door?" and we shook hands.

20.   We all talked afterward about how it was strange that the letter of surrender was not on the town's form, but that after all that had happened, it would have seemed that we did not trust the town's officials to have questioned this procedure.

21.   On or about February 18, 2004, we were told that the Agawam City Council ruled against the transfer of the Class II Dealership License to Five Star Auto Sales. We were told by its principal that his criminal record was unfairly made an issue despite the fact that all of his cases appeared to be dismissed and that he had heard from Councilor Rossi that he would not be found to be a proper person as a result.

22.   Shortly thereafter, Pereira decided that he wanted to renew the lease with us for the dealership and went down to Town Hall to pick up the license. My partner, Mike Biscaldi even saw that the license had been prepared and was sitting in the file but they were both told that there was a hold on it and that he would need a hearing.

23.   Pereira then re-submitted the application that he filled out in December and attended a hearing, where no action was taken. I understand that the renewal was taken off of the agenda and that he was not afforded a complete hearing. Just be fore Joe re-submitted the application, we spoke with the Clerk who told us that it should be no problem and that it should sail through as a renewal since they (the town) had always allowed renewals late.

24.   The Plaintiff had paid us $1,600.00 per month for use and occupancy of the dealership. We are presently not receiving rent as a result of the town having taken the renewal application off of the agenda.

25.   As a former car dealer, I always understood that licenses remained with the original holder if the transfer was rejected. Joe never intended and stated unequivocally that he expected to renew this license if the transfer did not go through.

Subscribed to under the pain and penalties of perjury this _12_ day of December, 2004.

Fran Connor

11728-040730\80107.wpd

E

## REGULAR MEETIN⌐ OF THE AGAWAM CITY COUNC⌐ February 17, 2004

President Rheault - I have an announcement that I like, a couple of announcements actually. The, I like to officially appoint to the sewer liaison committee four citizens to join with Councilor Mineo and Councilor Calabrese and Councilor Perry and the four are: Jack Cappuccilli, Jack O'Neill, Ron LaRiviere and Lowell McLane. For the record Councilor Letellier has just arrived. Second thing I have is in my discussion with the mayor today I asked him for the bid sheet as to the demolition, which is on next week's agenda, so you would have a complete detail as to who bid and what the bids were, so I like Bob if you would pass that around please. Thank you.

Item 6. Presentation of Petitions, Memorials & Remonstrances
   (a) Resolutions

   None.

Item 7. Report of Council Committees

   None.

Item 8. Elections

   None.

Item 9. Public Hearings
   (a)
      1. PH-2004-1-Application for Class II Dealer License for Five Star Auto Sales, 1514 Main Street, Agawam, MA (Conduct Public Hearing).

President Rheault - I now declare the public hearing opened. Is there a representative from Five Star that would like to address the council? You have ten minutes to address the council and please remain at the microphone if there are any questions back from the council. Go ahead sir.

Roberto Carvalhaes - Yes my name is Roberto Carvalhaes.

President Rheault - Can you come a little closer please to the microphone? Thank you.

Mr. Carvalhaes - Yes. My name is Roberto Carvalhaes. I am here with a partner here, so either one will apply for the use of car dealer.

President Rheault - And its your application sir? I am having difficulty hearing you up here.

Mr. Carvalhaes - Yes the application for the car, the car dealer.

REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

President Rheault - Any questions from the council? Councilor Rossi?

Councilor Rossi - Is the license in your name?

Mr. Pimenta - Yes that's my name.

Councilor Rossi - No the gentleman that just spoke who said he'd make an application for a license, is the license gonna be in your name.

Mr. Carvalhaes - Is gonna be under his name.

Councilor Rossi - Is not under your name?

Mr. Carvalhaes - No.

Councilor Rossi- Are you gonna be an owner?

Mr. Pimenta - In the future yes.

Councilor Rossi - No I am asking you sir. Are you an owner?

Mr. Carvalhaes - No I am translation for him.

Councilor Rossi - Aren't you listed on here as 50% ownership?

Mr. Carvalhaes - Yes is gonna be partner, but just his name under the application.

Councilor Rossi - You're a 50% partner but you are not, your name is not gonna be on the application for the license, is that what you are telling this body?

Mr. Carvalhaes - Yes, yes.

Councilor Rossi - Is there any particular reason for that?

Mr. Carvalhaes - No because we, by the time he was applying for the CORI it was too late, because I figured he is not gonna need the CORI for me so I just let him, just so I don't want to waste more time to apply for another CORI, so I just let the pieces run under his name.

Councilor Rossi - Well I think the CORI is still gonna apply sir whether your name was on the license or not. If you're 50% owner, I think the CORI is still gonna apply to you.

Mr. Carvalhaes - But we are friend for a long time and it does not gonna be the problem.

3

**REGULAR MEETING OF THE AGAWAM CITY COUNCIL**   February 17, 2004

Councilor Rossi - I understand you friendship sir but that has nothing to do with the policies or procedures with this board. As you are 50% owner you are gonna be required to have a CORI check. Wasn't that explained to you at the process?

Mr. Carvalhaes - Yes we know everything, we got talking about it but I know the business is just gonna come under his name but I am gonna work with him.

Councilor Rossi - Yes I understand that but that's not the procedure here. When you made an application for a license you made it in his name only, you made it as an individual ownership, when in fact its not an individual, its partnership and its a 50/50 partnership.

Mr. Carvalhaes - Like I say I am just gonna work with him. I know the business is gonna come under this name. He is not a property ...

Councilor Rossi- Well I don't know any other way to attack the problem unless someone else does.

President Rheault - Any other questions from the council? Councilor Letellier.

Councilor Letellier - Yes I am sorry. Is one of your gentleman, is it Ednei Rodrigues Pimenta? O.k. so that's Mr. Pimenta. So we do have a CORI for Mr. Pimenta. O.k. and sir you are now saying that you are gonna be the 50% owner.

Mr. Carvalhaes - Yes I just let the papers just to help me. But we know in the future is gonna be both name, but for now just one name and that's it.

Councilor Letellier - Well I think I agree with Councilor, I really this isn't time for discussion, just time for questions. Alright thank you sir.

President Rheault - Councilor Mineo.

Councilor Mineo - Is, I guess my question is, is that legal to do something like that? I mean I don't know. I am just putting the question out there. I don't know you got two gentlemen here, one is the owner, neither of them?

Councilor Letellier - I am sorry I don't mean to be talking out of turn. But there is a Ms. Connor who owns the property. There is a Mr. Pimenta the person who is gonna run the concern. Ms. Connor is the property owner.

Councilor Mineo - O.k., who is, the license is gonna be in whose name? His name and you're his partner.

Mr. Carvalhaes - We're working two halves, working together.

4

**REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004**

Councilor Mineo - I guess my question is I agree with Councilor Rossi why wasn't there another CORI check done? I mean you got two partners here and I don't know. I don't know how comfortable I feel with this.

President Rheault - Councilor Simpson.

Councilor Simpson - Thank you. On the application one of you gentleman lives in Framingham and the other one I think it was Marlborough. Are you moving to Agawam or who is running the business if you are running, if you are living that far away?

Mr. Pimenta - I have a dealer in Marlborough. We just apply for another one but that's no, we are talking about the partner you know 50%. So this time I am the one, I am just apply for one. I got another dealer in Marlborough. In the future that's possible I move to Agawam but not at this time because I got another dealer in Marlborough for 8 years and I am just being here to try to explain, because I don't speak English very well you know, this will happen you see he will work with me over there.

President Rheault - Sir so our clerk will be able to identify who is speaking, would you identify your name and address yes.

Mr. Pimenta - Yes 100% my name. Oh my name?

President Rheault - Yes.

Mr. Pimenta - is E-d-n-e-I and my last name is P-i-m-e-n-t-a.

President Rheault - And your address? I didn't catch your address.

Mr. Pimenta - Oh 849 Boston Post Road, Marlborough, MA.

President Rheault - Marlborough, MA.

Mr. Pimenta - Yeah.

President Rheault - Thank you. Alright Councilor Simpson I am sorry.

Councilor Simpson - O.k. just to clarify who is gonna be at the premise 9 - 5 five days a week? Who will be the person there? At this dealership on Main St.

Mr. Pimenta - Oh that's me. Me.

Councilor Simpson - You will be?

Mr. Pimenta - Yes Saturdays only.

REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

Councilor Simpson - O.k.

President Rheault - You're finished councilor?

Councilor Simpson - Oh I am sorry yes.

President Rheault - Councilor Magovern did you want to speak?

Councilor Magovern - That was my question. Who was gonna be there. You are gonna be the onsite manager?

Mr. Pimenta - Yeah that's me.

Councilor Magovern - And your partner, where are you gonna be located? Are you gonna be there onsite as well or?

Mr. Pimenta and Mr. Carvalhaes - Yes.

Councilor Magovern - So the both of you are gonna be on site as long as the facility is open?

Mr. Pimenta and Mr. Carvalhaes - Yes, together.

Councilor Magovern - Thank you.

President Rheault - Councilor Carr Bitzas.

Councilor Carr Bitzas - Thank you. Mr. Pimenta you had a class II license in Marlborough?

Mr. Pimenta - Yes for 8 years.

Councilor Carr Bitzas - For 8 years?

Mr. Pimenta - Yes.

Councilor Carr Bitzas - I wondered because I was looking at your application and on the question, there is a question, did you receive a license you answered yes. For what year? There is nothing filled in there. So you have a current class II license in Marlborough?

Mr. Pimenta - Yes in Marlborough.

Councilor Carr Bitzas - Are you gonna plan to live in Marlborough?

6

REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004

Mr. Pimenta - Yes.

Councilor Carr Bitzas - And move down here to Agawam?

Mr. Pimenta - Mhm, yes.

Councilor Carr Bitzas - I see. O.k.

President Rheault - Finished?

Councilor Carr Bitzas - Oh yes.

President Rheault - Any further questions from the council? Thank you very much. Is there anyone in the audience who would like to speak on behalf of the ...

Mr. Pimenta - I am gonna try the best I can go over there.

President Rheault - Anyone who would like to speak in opposition to the granting of the license? Anyone who would like to just in name only? Any further questions from the council? Seeing none. I now declare the public hearing closed. What is the council's pleasure? Councilor Rossi.

Councilor Rossi - Well I don't feel at this point here that the council can act on this license. First of all I am not happy with the fact that someone can enter into a partnership and apply for an individual member, application.

President Rheault - We have a motion on the floor first before we enter into dialogue.

Councilor Rossi- Oh I am sorry.

Councilor Simpson - So moved; seconded by Councilor Mineo.

President Rheault - Moved by Councilor .... Simpson, seconded by Councilor Mineo. Alright now you can talk.

Councilor Rossi - I am not comfortable with the application process at all. I think that it needs to go back and I think it needs to be resubmitted and I think they should may be have an opportunity to withdraw if they want. That's entirely up to them but the way I feel right now, there is a couple of items in here I am not comfortable with. First and foremost is the fact that the application wasn't filled out correctly. The application says list all owners on the thing, when clearly when the bond issue was submitted it was a 50/50 partnership. Now somebody is gonna enter a 50/50 partnership and put 50% of his money into a business he certainly, we have a right as a licensing authority to find out who that

REGULAR MEETING OF THE AGAWAM CITY COUNCIL   February 17, 2004

person is. And that wasn't done. Second of all I am not very happy with the CORI report that we got back. That doesn't please me very much. But what I see before me right now I don't see any way that I can vote in favor of this.

President Rheault - Councilor Letellier.

Councilor Letellier - Yes thank you. I have the same concerns that Councilor Rossi has but I have a bigger concern and that has to do with the two licenses that are pending, the one this week and the one next time. And I don't like the idea that we are allowing dealers to say that they are surrendering their license to a particular individual. If you want to surrender your license you surrender it to the town and then, this is another way to avoid the list. And I am not pleased with it. And it has nothing to do with these gentlemen you know granted there are some things in the CORI that specifically relate to running a dealership and yes may be we should have CORIs for both. But I think if we look at the bigger picture here and are we letting the class II dealer licensees decide who is gonna have the next class II dealer license? That's our job, we are the licensing authority. We don't just say o.k. well you Joe Smith is done with his license and he is friend with Joanne Smith and he says o.k. Joanne now you can have my license. I don't think that's the way it should work.

President Rheault - I agree.

Councilor Letellier- No I think the licensing committee and the ordinance committee need to sit down. We tried to get things straightened out last term didn't'[t happen, this needs to happen sooner rather than later. So I am not gonna be voting for any license in which someone surrenders to somebody else without surrendering to the town first, thank you.

President Rheault - I agree. Councilor Carr Bitzas.

Councilor Carr Bitzas - I have the same concern that Councilor Letellier has and I had that concern since last year and our plan was to sit down and talk about an ordinance that would clarify these things because there is no clarification in the present ordinance. So I would hope that our president would refer this, some of this, refer this to the ordinance and licensing committee to clarify these things. As far as the CORI goes, if you're partners, one partner is equal to the other one, it says right on your application for a surety bond. One owns 50%, the other owns 50%. If we have one CORI report, we don't have the other, then we don't have everything to work with, so we do need to have the other CORI. So I would suggest too that they go back and reapply for this, thank you. I won't be voting for it.

President Rheault - Point of clarification. I believe this is, is this not Councilor Magovern in front of your committee now?

Councilor Magovern - No.

8

**REGULAR MEETING OF THE AGAWAM CITY COUNCIL    February 17, 2004**

President Rheault - Its not?

Councilor Magovern - Not at the present time but I think it will be after tonight.

President Rheault - I think it should be and get actually Councilor Rossi probably should join and get that language straightened out so we don't have this in front of us again until everything is and I agree with Councilor Letellier...

Councilor Magovern - I'll call a meeting.

President Rheault - I don't believe they should be dictating to the council who is gonna inherit the license. O.k. so if you're, motion is in front of you to accept the application, if you're in favor of it vote yes, if not vote no, clerk please call the roll.

ROLL CALL - 10 NO, 1 ABSENT (Coun. Bitzas).

President Rheault - 10 yes, I am sorry 10 no and 1 absent we have defeated the application.

HAMPDEN SUPERIOR COURT
**Case Summary**
**Civil Docket**

## HDCV2004-01217
## J C P Inc d/b/a v Town of Agawam

CA 05-30012 MAP

| File Date | 12/20/2004 | | | |
|---|---|---|---|---|
| Status Date | 01/26/2005 | **Status** | Disposed: transfered to other court (dtrans) | |
| Origin | 1 | **Session** | B - Civil B - CtRm 5 | |
| Lead Case | | **Case Type** | D13 - Declaratory judgement (231A) | |
| | | **Track** | A | |

| Service | 03/20/2005 | **Answer** | 05/19/2005 | **Rule12/19/20** | 05/19/2005 |
|---|---|---|---|---|---|
| Rule 15 | 03/15/2006 | **Discovery** | 02/08/2007 | **Rule 56** | 04/09/2007 |
| Final PTC | 08/07/2007 | **Disposition** | 12/20/2007 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
J C P Inc d/b/a
Active 12/20/2004

**Private Counsel 638018**
Joseph M Pacella
Egan Flanagan & Cohen
67 Market Street
PO Box 9035
Springfield, MA 01103
Phone: 413-737-0260
Fax: 413-737-0121
Active 12/20/2004 Notify

DOCKETED

**Doing busnss as (alias)**
Autos By Joseph
Active 12/20/2004

U.S. DISTRICT COURT
DISTRICT OF MASS.
FILED
HOLYOKE'S OFFICE
2005 FEB 11 P 12:19

**Defendant**
Town of Agawam
Served: 12/21/2004
Served (answr pending) 12/21/2004

**Private Counsel 547718**
Carole Sakowski Lynch
Morrison Mahoney LLP
1500 Main Street Suite 2400
P O Box 15387
Springfield, MA 01115
Phone: 413-737-4373
Fax: 413-739-3125
Active 12/22/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 12/20/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 12/20/2004 | | Origin 1, Type D13, Track A. |
| 12/20/2004 | 2.0 | Plaintiff J C P Inc d/b/a's MOTION for Preliminary Injunction and Memorandum in support. |
| 12/20/2004 | 3.0 | Plaintiff J C P Inc d/b/a's MOTION for Short Order of Notice of notice on its motion for a preliminary injunction. |
| 12/20/2004 | | (P#3) S.O.N. ret. 12/22/04 at 2 pm. (Peter A. Velis, Justice). Notices given December 21, 2004 |
| 12/20/2004 | 4.0 | Summons and order of notice issued; returnable December 22, 2004 |
| 12/21/2004 | 5.0 | Notice of 93A complaint sent to Attorney General |

#07

MAS-20041213
holt.beck

Case 3:05-cv-30012-MAP Commonwealth of Massachusetts Filed 02/11/2005    Page 2 of 20

02.08.2005
10:33 AM

HAMPDEN SUPERIOR COURT
Case Summary
Civil Docket

## HDCV2004-01217
### J C P Inc d/b/a v Town of Agawam

| Date | Paper | Text |
|------|-------|------|
| 12/21/2004 | | #4 returned |
| 12/22/2004 | 6.0 | Defendant Town of Agawam's emergency MOTION to continue the hearing on plaintiff's motion for a preliminary injunction on December 22, 2004. -- Hard copy to follow. |
| 12/22/2004 | | (P#6) ALLOWED (Peter A. Velis, Justice)(Notices Fx: 12/22/04) |
| 01/04/2005 | 7.0 | Opposition to plff's. motion for P.I. filed by Town of Agawam |
| 01/04/2005 | | Hearing on (P#2) Motion for P.I. held, matter taken under advisement. (Peter A. Velis, Justice) |
| 01/26/2005 | | (P#2) DENIED w/o prejudice. See memo & decision. (Peter A. Velis, Justice) Notices faxed January 26, 2005 |
| 01/26/2005 | 8.0 | (dated 1/24/05) MEMORANDUM OF DECISION AND ORDER on the plaintiff's motion for preliminary injunction. (Peter A. Velis, Justice). Copies faxed January 26, 2005 |
| 01/26/2005 | 9.0 | (dated 1/20/05) Case REMOVED this date to US District Court of Massachusetts. |

### EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 12/22/2004 | Civil B - CtRm 5 | Motion/Hearing: miscellaneous # 6, Continue hearing on Preliminary injunction. | Event held as scheduled |
| 12/22/2004 | Civil B - CtRm 5 | Motion/Hearing: order of notice (2) | Event not held-req of Defendant |
| 01/04/2005 | Civil B - CtRm 5 | Motion/Hearing: order of notice #2 | Event held as scheduled |



A TRUE COPY
OF THE DOCKET MINUTES.
IN WITNESS WHEREOF, I hereunto
set my hand, and have caused the seal
of the Superior Court for the County
of Hampden to be affixed on this
8th day of February, 2005
*Barbara Holybecki*
*Deputy Assistant* Clerk

## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 04-1217

J.C.P., INC.[1]

vs.

TOWN OF AGAWAM

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**

JAN 2 6 2005

*[signature]*
CLERK-MAGIS. RATE

### MEMORANDUM OF DECISION AND ORDER ON THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The plaintiff, J.C.P., Inc. ("J.C.P") brings this action for declaratory relief[2] and damages alleging that the defendant, the Town of Agawam ("the Town"), improperly refused to renew J.C.P.'s Class II dealership license under G.L. c.140, § 59. J.C.P. now moves for preliminary injunction ordering the Town to issue a Class II dealership license to J.C.P., allowing it to sell used automobiles pending the outcome of this matter. For the reasons set forth below, J.C.P.'s motion for preliminary injunction is denied without prejudice.

---

[1] doing business as Autos by Joseph

[2] Where the plaintiff seeks review of a decision of a local licensing authority, declaratory relief pursuant to G.L. c. 231A is not an available remedy. Bermant v. Bd. of Selectmen of Belchertown, 425 Mass. 400, 403 (1997) ("[A] party aggrieved by a discretionary decision of a local licensing authority must . . . 'appeal under a statute which specifically provides a right of appeal from the decision . . .'"), quoting Johnson Prods., Inc. v. City Council of Medford, 353 Mass. 540, 545 (1968). Accordingly, the court treats the plaintiff's claim for declaratory relief as an appeal pursuant to G.L. c. 140, § 59.

## BACKGROUND

In 1999, Joseph Pereira ("Pereira"), president of J.C.P., obtained a Class II used car dealership license[3] from the Town and began operating a dealership known as Autos by Joseph. Each subsequent year, from 2000 to 2003, Pereira sought and obtained renewal of the license. In December 2003, Pereira decided to sell Autos by Joseph, and sought to transfer his license to a potential buyer, Five Star Auto Sales ("Five Star"). Five Star completed the transfer application on December 16, 2003.

On December 23, 2003, Pereira asked employees of the Town Clerk's office whether he needed to complete an application to renew his license. J.C.P. asserts that these employees assured Pereira that he did not need to renew the license because of the pending transfer application. The Town asserts that it repeatedly informed Pereira that he needed to complete a renewal application to prevent his license from expiring on January 1, 2004. J.C.P. asserts that Pereira submitted a renewal application on December 23, 2003. The Town asserts that Pereira did not submit a renewal application until May 28, 2004.

On February 18, 2004, the Town Council, the Town's licensing authority, denied Five Star's request to transfer the license from J.C.P. Subsequently, Pereira tried to pick up the license for 2004 from the Town Clerk's office. The Town Clerk, Richard Theroux, told him that there was a "hold" on the license, and informed him that he needed to reapply for its renewal. Pereira then "reactivated" the renewal application he filed in December. The Town scheduled a public hearing on J.C.P.'s application to be held on June 6, 2004, during the Town Council meeting. At the meeting, Town Councilor Rossi informed Pereira that a hearing would not be

---

[3] General Laws c. 140, § 58, creates three different classes of car dealer licenses. A Class II license may be granted to "[a]ny person whose principal business is the buying or selling of second hand motor vehicles".

2

held because J.C.P. had surrendered its license by failing to apply for renewal. The Town Council voted the hearing off the meeting's agenda and took no further action on J.C.P.'s application.

## DISCUSSION

To issue a preliminary injunction, "a judge initially must consider whether the plaintiff has demonstrated that without relief . . . [it] would suffer irreparable harm, not capable of remediation by a final judgment in law or equity." Commonwealth v. Mass. CRINC, 392 Mass. 79, 87 (1984), citing Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 n.11 (1980). Additionally, the plaintiff must show that it is likely to succeed on the merits at trial. Mass. CRINC, 392 Mass. at 87. The judge must then balance these factors against the affects that granting an injunction would have on the public. Id. at 88-89. "Thus, before issuing . . . [a] preliminary injunction, a judge is required to determine that the requested order promotes the public interest, or alternatively, that the equitable relief will not adversely affect the public." Mass. CRINC, 392 Mass. at 89. A preliminary injunction may issue "[o]nly where the balance of these risks cuts in favor of the moving party." Cheney, 380 Mass. at 617.

General Laws c.140, § 59, empowers the licensing authorities in Massachusetts cities and towns to grant used car dealer licenses upon determining that the proposed car dealer "is a proper person to engage . . . [in used car sales], that said business is or will be his principal business, and that he has available a place of business suitable for the purpose." G.L. c. 40, § 59. The licensing boards issue the licenses yearly, and all used car dealer licenses expire on January 1 of each year. Id.

License holders must apply to renew their licenses each year. <u>Roslindale Motor Sales, Inc.</u> v. <u>Police Comm'r of Boston</u>, 405 Mass. 79, 82 (1989). "There is no special procedure for renewal; the applicant applies in the same manner as a first-time applicant." <u>Id.</u> at 82. An applicant seeking to renew its license is not entitled to an evidentiary hearing. <u>Id.</u> at 83. However, "as a matter of fundamental fairness, an applicant for the renewal of a license, especially one who has had a license for a number of years, is entitled to a specific statement by . . . [the licensing board] setting forth the reason or reasons for . . .[its] decision not to renew the license." <u>Id.</u> The licensing board must base its decision "on a legally tenable ground that is not arbitrary or capricious." <u>Id.</u> at 83 n.6, 84 ("'[I]n an action for judicial review of a local licensing authority's denial of [a renewal] application for a license under G.L. c. 40, § [59] . . . the appropriate standard of review is error of law or abuse of discretion, as measured by the 'arbitrary and capricious' test.'") (brackets in original), quoting <u>Caswell</u> v. <u>Licensing Comm'n for Brockton</u>, 387 Mass. 864, 878 (1983).

In this case, the Town did not provide J.C.P. with a specific statement of the reason or reasons for not renewing its license, nor did the Town ever decide whether to grant or deny J.C.P.'s renewal application. Instead, the Town Council concluded that J.C.P. no longer had a valid license, and it voted a hearing on the renewal application "off the agenda" during its July 6, 2004, Town Council meeting. While the Town characterizes this action as a denial, the court rules that the Town Council's vote at the July 6, 2004, meeting did not provide J.C.P. with a decision on its application. Moreover, the Town Council's actions did not comply with <u>Roslindale Motor Sales, Inc.</u>, which requires the Town Council to provide J.C.P. with a specific statement of reasons for denying its application. <u>Id.</u> at 83. The Town Council's inaction, coupled with a failure to provide a specific statement of reasons if it intended to deny J.C.P.'s

4

application by its action, prevents J.C.P. from making a "meaningful and focused appeal" to this court. Id. at 84 (noting that the specific statement requirement "emphasizes the seriousness of such a decision and also permits the applicant to make a meaningful and focused appeal to the Superior Court under G.L. c. 140, § 59"). It also prevents this court from fully evaluating J.C.P.'s likelihood of success on the merits. Accordingly, the court remands the case to the Town Council so that it may make a decision on J.C.P.'s application, and so it may provide J.C.P. with a specific statement should it choose to deny the application.

Since the court rules that it cannot fully evaluate J.C.P.'s likelihood of success on the merits, it does not address whether J.C.P. would face irreparable harm if the preliminary injunction did not issue or whether issuing a preliminary injunction would adversely affect the public.

## ORDER

For the forgoing reasons, it is therefore **ORDERED** that the plaintiff's motion for a preliminary injunction be **DENIED** without prejudice based on the Town of Agawam's failure to conform to the procedures established by G.L. c. 140, § 59, and by Roslindale Motor Sales, Inc. It is **ORDERED** that this matter be **REMANDED** to the Town Council for a decision on the plaintiff's application. If the Town Council denies the plaintiff's application, it is **ORDERED** that the Town Council provide the plaintiff with a specific statement setting forth the reason or reasons for its denial.

Justice of the Superior Court

DATED: January 24 , 2005

5

a true copy
Attest:
Barbara Holubecki
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2004-01217-B

J.C.P., Inc. d/b/a AUTOS BY JOSEPH,    )
    Plaintiff    )
        )
v.    )
        )
TOWN OF AGAWAM,    )
    Defendant    )

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**

JAN ~ 4 2005

*Marie S. Mazza*
CLERK-MAGISTRATE

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now comes the defendant, Town of Agawam, and respectfully moves that this court deny plaintiff's motion for injunctive relief. As reason for this request, the defendant states as follows.

## STATEMENT OF THE CASE

On November 5, 1999, Joseph Pereira, doing business as Autos by Joseph, applied for a Class II dealer license to buy, sell, exchange or assemble second-hand motor vehicles or parts with the Town Clerk's Office in Agawam, Massachusetts. On February 7, 2000, the Agawam Town Council approved the issuance of a Class II dealer license to Mr. Pereira. The license expired on January 1, 2001.

On October 18, 2000, November 26, 2001, and November 19, 2002, Joseph Pereira or J.C.P., Inc. d/b/a Autos by Joseph re-applied for Class II dealer's licenses. Each year, the applications were approved and Autos by Joseph was issued renewal licenses, effective January 1 of each year. In all cases, the licenses expired on January 1 of the following year.

By letter, dated September 15, 2003, the Town Clerk, Richard Theroux, informed J.C.P., Inc. d/b/a Autos by Joseph that it needed to apply for the renewal of its Class II dealer's license

7

by November 21, 2003 in order to avoid being in violation. In the letter, J.C.P., Inc. was provided with the four necessary forms needed to process the renewal application. See Exhibit 1, Affidavit of Richard M. Theroux.

On October 4, 2003, the September 15, 2003 letter sent to J.C.P., Inc. was returned to the Town Clerk's Office as undeliverable. The postal service indicated on the returned letter that Autos by Joseph had moved and had left no address. See Exhibit 1, Affidavit of Richard M. Theroux.

On December 16, 2003, Ednei Pimenta filed an application with the Town Clerk's Office for a Class II dealer's license for the entity known as Five Star Auto Sales. On the application, Mr. Pimenta indicated that Five Star Auto Sales was an individual concern, not a partnership, association or corporation, looking to do business at 1514 Main Street in Agawam, the address occupied by J.C.P., Inc. See Exhibit 2, Application for a License completed by Ednei Pimenta.

On December 23, 2003, Joseph Pereira, along with Fran Connor and Michael Biscaldi, who were identified as the owners of 1514 Main Street in Agawam, met with the Town Clerk and informed him that J.C.P., Inc. wished to transfer its license to Five Star Auto. As a result, the Town Clerk assisted Mr. Pereira in preparing a letter setting forth his wish to transfer his license to Five Star Auto. At the same time, the Town Clerk informed Mr. Pereira, Mr. Connor and Mr. Biscaldi that the request to transfer the license needed the approval of the Town Council. The Town Clerk informed them that since J.C.P., Inc.'s Class II license was scheduled to expire on January 1, 2004, J.C.P., Inc. should apply to renew the Class II license even though it was requesting that the license be transferred. The Town Clerk informed them that in order to transfer the license, J.C.P., Inc. had to have a valid license which it would not have if it expired on January 1, 2004. The Town Clerk recalls giving Mr. Pereira the necessary forms to complete

in order to re-apply for the Class II dealer license. These were the same forms that were sent to him in the September 15, 2003 letter. See Exhibit 1, Affidavit of Richard M. Theroux.

At no time did anyone from the Town Clerk's Office tell Mr. Pereira, Mr. Connor, Mr. Biscaldi or anyone else affiliated with J.C.P., Inc. that it was not necessary to renew the Class II license. In fact, in addition to Mr. Theroux, Judy Beauregard, the Assistant Town Clerk, and Margaret Pandolfi, the Principal Clerk at the Town Clerk's Office, informed Mr. Pereira that he should re-apply for the Class II dealer's license since it was expiring on January 1, 2004. See Exhibit 1, Affidavit of Richard M. Theroux; Exhibit 3, Affidavit of Judy Beauregard; and Exhibit 4, Affidavit of Margaret Pandolfi.

On February 17, 2004, the Town Council held a hearing on the application of Five Star Auto Sales, Exhibit 2, to operate a used car dealership at the address previously occupied by J.C.P., Inc. Roberto Carvalhaes represented Five Star Auto Sales at the hearing and identified himself as an equal partner in the business. However, he acknowledged that the application submitted on behalf of Five Star Auto Sales was made solely by Ednei Pimenta and it did not list Mr. Carvalhaes as a partner in the business. This concerned the Council. There was also discussion at the hearing about the CORI check that had been run on Mr. Pimenta as part of the application for the Class II license. Some of the councilors had concerns about the content of the CORI report. In the end, the Council voted not to approve the application of Five Star Auto Sales to assume the license previously held by J.C.P., Inc. due to the above concerns.

On May 28, 2004, J.C.P., Inc. applied for a Class II dealer license. The application was placed on the City Council agenda and a hearing was held on July 6, 2004. Because the City Council concluded that J.C.P., Inc. no longer had a valid license, given that it had expired on

3

January 1, 2004 and had not been renewed, it voted the application off the agenda and refused to issue J.C.P., Inc. a license.

## ARGUMENT

### I.     The Plaintiff is not Entitled to Injunctive Relief.

To obtain a preliminary injunction, the plaintiff must demonstrate (1) that it is likely to succeed on the merits of its claim; (2) that it will suffer irreparable injury if the injunction is not issued; (3) that the injury it will suffer outweighs any injury the defendant will suffer if the injunction is granted; (4) that the public interest will not be affected adversely by the issuance of the injunction. *Commonwealth v. Mass. Crinc*, 92 Mass. 79, 87-89 (1984); *See Packaging Industries Group, Inc. v. Chaney*, 380 Mass. 609, 616-18 (1980). The plaintiff cannot meet these criteria.

### A.     Plaintiff is Not Likely to Succeed on the Merits of Its Claim.

In order to bring an action for the declaratory relief under General Laws Chapter 231A, there must be both an actual controversy and legal standing. *United Oil Paintings, Inc. v. Commonwealth*, 30 Mass. App. Ct. 958, 959 (1991) *quoting Massachusetts Ass'n. of Indep. Ins. Agents and Brokers, Inc. v. Commr. Of Ins.*, 373 Mass. 290, 292 (1977).

In the subject case, the plaintiff requests that the court issue a Class II dealership license to the plaintiff so that it may "continue" to sell used motor vehicles pending the outcome of this matter.

This court should deny plaintiff's request since the plaintiff cannot show a substantial likelihood of success on the merits. First, the plaintiff has not met the 10-day statute of limitations contained in General Laws Chapter 140, Section 59. It provides in pertinent part as follows:

4

281376v1

*Any person aggrieved by an action of the licensing board or officer refusing to grant, or revoking a license for any cause may, within 10 days after such action, appeal therefrom to any justice of the superior court in the county in which the premises sought to be occupied under the license or permit applied for are located.* (emphasis added)

The plaintiff's application for a Class II dealer's license was denied by the City Council on July 6, 2004. In that the subject action was not filed with the Court until December 17, 2004, the 10-day statute of limitations has not been met.

Secondly, the plaintiff also cannot show a substantial likelihood of success on the merits because the plaintiff's Class II dealer license was not renewed due to the plaintiff's failure to re-apply for the license before it expired on January 1, 2004. As indicated in Exhibits 1, 3 and 4, the plaintiff's representative was advised by representatives of the Town Clerk's Office that he should apply for a renewal of his license even though he intended to transfer it to Five Star Auto Sales. However, the plaintiff neglected to do so, and even waited over three months to apply after the City Council turned down the application of Five Star Auto Sales in February 2004. In addition, the Town Clerk's Office attempted to notify the plaintiff on or about September 15, 2003 that it was time to file for a renewed application. However, because the plaintiff abandoned the business of used auto sales at the subject location and failed to notify the Town Clerk's Office of a new address, the Town Clerk was unable to provide the plaintiff with the necessary documents with which to re-apply for the license. Nonetheless, given that the plaintiff had been re-applying consistently each year at the appropriate time interval, the plaintiff should have known that it was necessary to re-apply for the license. In fact, the license that the plaintiff held explicitly stated that it expired on January 1, 2004. In essence, there is no evidence of any wrongdoing on the part of any Town employee and the plaintiff has only itself to blame for its failure to timely apply for a new license.

281376v1

B.    The Plaintiff Cannot Show, Absent Injunctive Relief, That There Exists A Significant Risk of Harm to It of Irreparable Harm.

As a result of not receiving a Class II dealer license following its application on May 28, 2004, the plaintiff alleges that it lost business value and profits. In essence, the plaintiff alleges economic harm.

However, the Courts have long held that economic harm alone will not suffice as irreparable harm. _Pri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 228 (2001)._ While the courts have held that economic harm may suffice as irreparable harm if the loss threatens the very existence of a plaintiff's business, by analogy, the plaintiff cannot argue that it will be prevented from conducting business elsewhere if it is not given the license. Indeed, such a contention on the part of the plaintiff is far too speculative for this court to consider.

Moreover, the plaintiff cannot establish that the very existence of his business was damaged by the lack of license, given that he had apparently abandoned the business long before his application had been considered. That is, sometime prior to September 23, 2003, the plaintiff had abandoned his business in Agawam, given that the correspondence sent to the plaintiff's last recorded address was undeliverable. In addition, upon information and belief, the plaintiff has been doing business at 1650 Bay Street in Springfield, Massachusetts. In fact, J.C.P., Inc., obtained a second-hand motor vehicle dealer bond, pursuant to General Laws Chapter 140, Section 58(c), for the City of Springfield on December 1, 2003 which was effective as of January 1, 2004. See Exhibit 5. Therefore, the plaintiff cannot establish that it will sustain irreparable harm if it is not granted a license.

### C.    Balance of Hardship Does Not Tilt in the Plaintiff's Favor.

In order to prevail on its request for preliminary injunction, the plaintiff must also establish that the balance of hardship tilts in its favor. Given that the plaintiff neglected to re-apply for a Class II dealer license before it expired on January 1, 2004 and further delayed any attempt to reapply for the license for an additional five months, together with the fact that the plaintiff is apparently doing business in the City of Springfield, the plaintiff cannot show that the balance of hardship tilts in its favor. Rather, if the plaintiff is allowed to receive a license more than a year after it should have been renewed, there will be a direct violation of General Laws Chapter 140, Section 59 which states that licensing authorities may grant licenses which shall expire on January 1 following the date of issue unless sooner revoked. Furthermore, to issue a license to the plaintiff at this late date will unnecessarily weaken the role of the licensing authority, in this case the Town Council of Agawam. Clearly, this would be a bad precedent to set.

### D.    Granting the Injunction will Negatively Affect the Public Interest.

If this court were to issue a license to the plaintiff more than a year after the time within the plaintiff should have applied for a license renewal, this court will be overlooking the clear statute of limitations contained within General Laws Chapter 140, Section 59. It will also be overturning a well reasoned and appropriate decision of the Town Council which is the licensing authority for the Town of Agawam. Furthermore, it will be ignoring the customs and practices of the Town of Agawam which will be unfair to others similarly situated. Indeed, there is no truth to the allegations stated by the plaintiff in its motion that two other dealerships in the Town of Agawam -- Chris' Autos and Agawam Tire and Auto -- received Class II dealer licenses after applying for them beyond the expiration date. As indicated in the affidavit of Margaret Pandolfi,

which is attached as Exhibit 4, both of these entities applied for the renewal license before their licenses expired on January 1.

Finally, one of the primary purposes of an injunction is to main the status quo pending trial. In this case, ordering the Town of Agawam to issue a license to J.C.P., Inc. would not maintain the status quo, given that J.C.P. had abandoned his business sometime prior to September 2003.

## CONCLUSION

For the reasons set forth above, the defendant respectfully requests that this court deny the plaintiff's request for injunctive relief.

The Defendant
Town of Agawam

By Their Attorneys
MORRISON MAHONEY LLP

Carole Sakowski Lynch BBO#547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA  01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on __1/4/05__

a true copy.

Attest:

Deputy Assistant Clerk

281376v1                                   8

1

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

|  |  |
|---|---|
| J.C.P., INC. d/b/a AUTOS BY JOSEPH, <br> Plaintiff <br><br> v. <br><br> TOWN OF AGAWAM, <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>AFFIDAVIT OF RICHARD M. THEROUX</u>

I, Richard M. Theroux, hereby depose and say:

1.  I am the Town Clerk for the Town of Agawam, Massachusetts.

2.  By letter, dated September 15, 2003, I informed J.C.P., Inc. d/b/a Autos by Joseph that it needed to apply for the renewal of its Class II dealer license. In the letter, I requested that J.C.P., Inc. complete the application for license, personal criminal record request form, federal identification number form and the form for a $25,000.00 surety bond. These forms were included in the letter. I also informed J.C.P. that after the completed forms were received by my office, the application would be placed on the next Town Council agenda. (A copy of the September 15, 2003 letter with the attached forms is attached as Exhibit A.)

3.  On October 4, 2003, the September 15, 2003 letter, (Exhibit A), was returned to my office as undeliverable as the postal service indicated that Autos by Joseph had moved and had left no address. (See Exhibit B.)

4.  On December 23, 2003, I had contact with Joseph Pereira, Fran Connor and Michael Biscaldi in the office of the Town Clerk. During the conversation, I was informed by these gentlemen that J.C.P., Inc. wished to transfer its license to Five Star Auto. As a result, my office assisted Mr. Pereira in preparing a letter advising the Town of Agawam of his wish to transfer the license. During the conversation, I informed Mr. Pereira and the other two gentlemen that J.C.P., Inc. should apply to renew the Class II license since it was scheduled to expire on January 1, 2004. I informed them that the transfer request had to be approved by the Town Council. To the best of my recollection, Mr. Pereira was given a copy of the necessary forms to complete in order to reapply for the Class II dealer license. The forms given to him were the same as the documents that had been mailed to him in Exhibit A.

5.    When Mr. Pereira left my office on December 23, 2003, I was under the impression that he was going to apply for the renewal of his Class II dealer license. I clearly recall informing Mr. Pereira before he left the Town Clerk's Office that he needed to have a current license in place while he tried to transfer his license to Five Star Auto or some other individual or entity. I told him that he should renew the license for 2004 and then take the matter of a transfer up with the Town Council.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___4___ DAY OF JANUARY 2005.

Richard M. Theroux

281358v1                          2

EXHIBIT A



# Town of Agawam

**36 Main Street      Agawam, Massachusetts 01001-1837**

**Tel. 413-786-0400        Fax 413-786-9927**

September 15, 2003

JCP, INC dba AUTO'S BY JOSEPH
1514 MAIN STREET
AGAWAM, MA 01001

Dear License Holder:

It is time to make application for the renewal of your Class II Dealer License. Please complete the
following forms.

1) **APPLICATION FOR LICENSE** - please type or print legibly in black ink.

2) **PERSONAL CRIMINAL RECORD REQUEST FORM** - this form has to be notarized and mailed
to the address on the reverse side of the form. Your completed form should include a self-addressed
stamped envelope. (This could take a few weeks for the record check to be returned to you.) **Please do
this immediately.**

3) **FEDERAL IDENTIFICATION NUMBER** form.

4) **$25,000 SURETY BOND** - according to Chapter 422 of the Acts of 2002, please note in Class 2
section, Class II Dealer owners are now required to hold a surety bond of 25,000.

**Please turn all four forms in together to the Town Clerk's office,** record check from Criminal History
Systems Board, the license application, Federal Identification Tax form and proof of the surety bond.
These will be placed on the next Town Council agenda. Approval of a license requires 2 Council meet-
ings, first as new business and the second under old business to be approved or denied.

Any forms turned in after November 21st will not be approved before the new year and you will be in
violation.

Sincerely,

Richard M. Theroux,
Town Clerk